THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DENNIS BLUMSTENGEL, Defendant-Appellant.

Fifth District    No. 77-116

Opinion filed July 13, 1978.

JONES, J., dissenting.

Michael J. Rosborough and Randy E. Blue, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert H. Howerton, State's Attorney, of Marion (Bruce D. Irish and Martin N. Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:
Defendant Dennis Blumstengel pleaded guilty to 10 charges of deceptive practices and one charge of burglary. He was also found guilty at a bench trial of an additional burglary charge arising from the same set of circumstances upon which the first burglary charge was based. He was sentenced to concurrent terms of imprisonment of 2 to 20 years for each burglary and 364 days on each deceptive practices charge. On appeal defendant contends that the court considered improper factors and abused its discretion in sentencing him and erred in failing to modify the sentence on his motion to withdraw his plea of guilty.

Defendant Blumstengel and Wanda Casey were stopped by the Illinois State Police while hitchhiking on Interstate 57 on September 14, 1976. A routine warrant check was made and it was discovered that there were 11 warrants out on defendant for deceptive practices. Defendant was arrested and he and Wanda Casey consented to a search of two suitcases which they were carrying. The suitcases contained an AM-FM radio and a citizen's band radio which were later identified as stolen property. Blumstengel was arrested on a theft charge concerning the AM-FM radio although he contended that he had purchased the radio from a friend.

The following day Casey was also arrested on theft charges. Blumstengel and Casey were charged individually and jointly with burglary and theft concerning the stolen AM-FM and CB radios. Defendant Blumstengel entered an unnegotiated plea of guilty to the charge of burglary of the CB radio and to 10 of the 11 charges of the deceptive practices. The factual basis offered by the State's attorney for the plea of guilty on the burglary charge was that defendant had driven the car for the persons who actually had entered the vehicle containing the CB radio and committed the theft. The factual basis for the guilty plea on 10 charges of deceptive practices was that the defendant willfully and with intent to defraud, delivered checks to 10 different parties knowing that the checks would not be paid by the depository institutions.

Following defendant's plea of guilty on the charges of deceptive practices and burglary of the CB radio, a bench trial was held on the information charging defendants Blumstengel and Casey jointly with burglary concerning the theft of the AM-FM radio which was stolen from a pickup truck on September 13, 1976, and found in Blumstengel's and Casey's possession the following day. Defendant testified at trial that on the night of September 13, 1976, he had been at Barra's Tavern in Herrin, Illinois, with Wanda Casey and Rebecca Lannon. He stated that at Casey's request he had left the tavern and picked up Lannon's car which was parked about a block away. Defendant testified that when he pulled up in front of the tavern, the women jumped in the car with the stolen AM-FM radio and directed him "to get the heck out of here." According to defendant the first he knew of the stolen AM-FM radio was when Casey jumped in the car, pulled the radio from under her blouse and told him she had taken it. The trial judge refused to believe defendant's denial of any involvement in the burglary of the AM-FM radio and instead found defendant guilty of the burglary beyond a reasonable doubt.

The presentence report indicated that the 28-year-old Blumstengel was one of 8 children and had been plagued by a history of family and personal problems. Defendant was referred to the juvenile court in St. Louis County when he was 14 years of age by the County Department of Welfare as a result of parental rejection and neglect. He was placed with the Lakeside Center for Boys when he was 15 years of age because of these problems. After a year at Lakeside the staff of the Center determined that although Dennis was suitable for discharge, "neither parent appears to be able to provide the kind of understanding and emotional support that this boy needs at this time." Upon his discharge from the Lakeside Center the staff concluded that defendant's problems were "clearly and directly related to anxiety and resentment he has experienced because he has felt unloved by his parents." Following his discharge from the Center in the spring of 1975, Dennis was placed with

his father despite strong reservations on the part of the Center's staff that Dennis's father would be unwilling or unable to properly care for Dennis.

Defendant has been married three times and is presently separated from his third wife. He spent two years in the U. S. Army, including a year in Vietnam, during which time he earned a number of medals and awards. He also underwent psychiatric evaluations and was court-martialed on two separate occasions. Defendant has had serious marital problems which he attributes to excessive drinking. He has been treated for alcoholism and has spent some time at a veterans hospital, half-way houses for alcoholics, and in a counseling program with Alcoholics Anonymous. In the opinion of the director of the Alcohol Information Center, one of the half-way houses where defendant stayed, defendant "had numerous problems other than alcohol abuse" and was in need of "guidance in a long term, structured, mandatory program, with concern for the total man." Defendant had one prior conviction for disorderly conduct-intoxication for which he was assessed a $35 fine. The probation officer who compiled the presentence report advised the court that defendant should be put on probation or sentenced to a periodic term and probation. The State recommended that he be sentenced to a term of 1 to 5 years.

At the sentencing hearing defendant testified that his mind "had been screwed up" since he was 10 or 11 years old and that he had turned to drinking in order to escape his disappointing life. He also stated that he could quit drinking if he received the proper help and asked that he be given probation and an opportunity to seek treatment. Defendant's counsel then requested that he be placed on probation and be required to undergo treatment for his alcoholism.

The trial judge commented extensively on defendant's problems with alcohol and the judge's own experiences with alcoholics in imposing concurrent sentences of 2 to 20 years for each burglary charge and 364 days for each deceptive practices charge:

> "Now there's some disagreement on how to achieve rehabilitation of an individual. It has been my experience, and I've had extensive experiences in this particular area, because I am a judge from Union County, which has the Anna State Hospital. The four years I had all mental illness cases and alcoholic cases from Zone 8; in other words all committments [sic] to the Anna State Hospital from all the 26 or 28 southern counties. I have experiences in my own family of alcoholics. I have an uncle who went to Vandalia for a year. He was an alcoholic. The point is he has now cured himself, in a sense that he quits for the next minute. He says he hasn't quit drinking, he just quits for the next minute. If he gets by that minute, he quits for the next minute. That's been going on for over

25 years. * * *The point is he made it clear to me, over and over to see that I went straight in my youth that the only person who can stop any person from drinking, is that individual himself. The burden is on you. You've tried all these programs; you've been in various hospitals; the record's replete here and yet you haven't cured yourself. Now the question is when are you going to cure yourself and how are you going to cure yourself. Now am I supposed to put you on probation, when there's nothing in your record to indicate to me that you're not going to walk right out of this court and get drunk and start taking pills.* * *

You're the one who's going to have to make the decision whether you're going to stay out of the penitentiary. You're the one who has to make the decision whether you're going to drink or not drink. I threw away cigarettes and I've been told by many an alcoholic that it's more difficult to throw away cigarettes than it is booze. I have an urging, even now, for it. So I realize who can stop you from drinking and that's you. I don't care how many psychologists you talk to or psychiatrists or social workers or what have you.* * *

I've had too many cases, too many individuals, I've had them come back to see me and indicate they've finally realized that there's only one person that can help, and that's you, yourself. * * * Now I don't want to be harsh but I feel it's my duty and I've seen it work and I've had it work, over and over, that if I sent that individual to the penitentiary—I've seen them come out and have had them come in here and thank me for they finally realized who's responsible for their conduct. And they thank themselves. * * * Now how can I be of the opinion, looking at your record, that you're not a danger to society, under your present condition? How can I honestly say, when it's been my past experience that imprisonment has been the best correctional treatment, for a person who claims to be an alcoholic; from my own personal relationship with my own family I've seen the change come over them, let alone the last twelve years of practice. I've had case after case of alcoholics. * * * So, I'm going to put the burden on you, Mr. Blumstengel. You can go up and think about it. * * * This court finds your imprisonment necessary for the protection of the public. That the best correctional treatment can most effectively be provided to you by a sentence to imprisonment; that it would deprecate the seriousness of your conduct and be inconsistent with the ends of justice to grant you probation. * * * Now I'm going to fashion a sentence which I believe has been successful in the past because it puts the burden on you."

■■ Defendant contends that the trial court abused its discretion in

sentencing him to a 20-year maximum based in part on the judge's personal experiences with alcoholics. The Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, §11.) A sentencing judge thus has the responsibility to impose a sentence which will adequately punish a convicted defendant, protect the public from future offenses, individualize the punishment to fit the particular offender and offense and reform and rehabilitate the offender into a productive member of society. It is generally held that sentencing is within the sound discretion of the trial court and a sentence that is within statutory limits will not be disturbed upon review unless it represents an abuse of discretion. (*People v. Perruquet,* 68 Ill. 2d 149, 163, 368 N.E.2d 882; *People v. Butler,* 64 Ill. 2d 485, 490, 356 N.E.2d 330.) This general rule is based on an assumption that the trial court is in a superior position to evaluate the numerous and sometimes conflicting factors which must be considered in the determination of an appropriate sentence. (*People v. Allen,* 56 Ill. 2d 536, 309 N.E.2d 544.) The mere fact that the trial court has a superior opportunity to observe and evaluate the rehabilitation potential and dangerousness of a criminal offender, however, does not imply that the sentence imposed in a particular case is just and equitable. *People v. Harpole,* 97 Ill. App. 2d 28, 239 N.E.2d 471; *People v. Grigsby,* 75 Ill. App. 2d 184, 220 N.E.2d 498.

■■ ■ Defendant asserts the trial judge improperly focused on his dependence on alcohol in imposing sentence. The State essentially acknowledges that the trial court was primarily concerned with defendant's alcoholism, but contends that there is no indication in the record that the trial court based the sentence on defendant's alcoholism or the judge's personal experience with alcoholics. We agree with the State that a criminal offender's dependence on alcohol may properly be considered as a factor in determining the offender's rehabilitation potential and the most appropriate disposition. (See *People v. Gavin,* 108 Ill. App. 2d 412, 248 N.E.2d 137; *People v. Daugherty,* 106 Ill. App. 2d 250, 245 N.E.2d 7.) A number of other factors, however, must also be considered by a trial court in imposing sentence, including the prior criminal record of a defendant (*People v. Hart,* 132 Ill. App. 2d 558, 563, 270 N.E.2d 102) and the extent of defendant's participation in the crime (*People v. Morris,* 43 Ill. 2d 124, 131, 251 N.E.2d 202). While we agree with the State that a defendant's alcoholism does not preclude incarceration and may be considered in imposing sentence, we believe the record clearly indicates that in this case the trial judge was concerned almost exclusively with defendant's addiction to alcohol rather than with his criminal conduct.

Defendant's only prior conviction was for the minor misdemeanor offense of disorderly conduct. Defendant's participation in the two burglaries for which he was sentenced was very limited. He pleaded guilty to driving the car in one burglary and was found guilty of the other burglary, apparently on a theory of accountability. Yet the court imposed the statutory maximum and an enhanced minimum for these offenses. (Ill. Rev. Stat. 1975, ch. 38, pars. 1005—8—1(b)(3) and (c)(3).) A fair inference to be drawn from the record in this case is that the trial judge's objective in sentencing defendant was to cure defendant of his alcoholism rather than to rehabilitate a criminal offender. The trial judge offered the following justification for rejecting defendant's request for probation:

> "Now am I supposed to put you on probation, when there is nothing in your record to indicate to me that you are not going to walk right out of this court and get drunk and start taking pills?"

The judge also devoted considerable attention to his own personal experience with alcoholism and alcoholics. "How can I honestly say, when it's been my past experience that imprisonment has been the best correctional treatment, for a person who claims to be an alcoholic; from my own personal relationship with my own family I've seen the change come over them, let alone the last 12 years of practice." There is no indication in the record that the trial judge considered defendant's limited participation in the burglaries or the complete absence of any significant prior criminal offenses. We hold that this sentence was excessive and an abuse of judicial discretion. The trial court's stated justification for the sentence clearly does not comport with the constitutional mandate to consider both the seriousness of the offense and the rehabilitative potential of the criminal offender. We are unable to assess the precise impact of the trial judge's concern for defendant's alcoholism or the judge's observations about his personal experience with alcoholics. However, in view of the court's inordinate concern with these factors and utter failure to consider other proper and very relevant factors in imposing sentence, we must vacate defendant's sentence and remand the cause to the circuit court of Williamson County for resentencing.

Reversed and remanded with instructions.

WINELAND, J., concurs.

Mr. JUSTICE JONES, dissenting:

Believing that the case of *People v. Perruquet,* 68 Ill. 2d 149, 368 N.E.2d 882, requires affirmance, I respectfully dissent.