**People of the State of Illinois, Defendant in Error, v. Clifford Allen, Plaintiff in Error.**

**Gen. No. 50,697.**

First District, Third Division.

July 21, 1966.

Joe A. Sutherland, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Albert J. Armonda, Assistant State's Attorneys, of counsel), for defendant in error.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from a judgment of guilty based upon an indictment charging the commission of the offense of armed robbery. The defendant was found guilty after a jury trial. The defendant was sentenced from two to eight years in the penitentiary.

The defendant raises two points, (1) the indictment is insufficient to meet the constitutional or statutory requirements for validity, and (2) that because of the prejudicial remarks of the Assistant State's Attorneys in their closing arguments the convictions should be reversed.

The defendant sued out a writ of error in the Supreme Court of Illinois and the case was transferred to this court. By its order of transfer the Supreme Court said the following:

■■■■■■■■
■■■■■

"The defendant claims that the indictment was insufficient to comply with statutory and constitutional requirements. It does not appear that the alleged constitutional defect was raised in the trial court and the charge now made is insufficient to give us jurisdiction. It is also alleged that certain remarks of the prosecutor deprived the defendant of a fair trial. In our opinion this claim presents only a question of whether error was committed and not a substantial constitutional question. On the Court's own motion the cause is transferred to the Appellate Court for the First District."

The indictment charged the defendant with the commission of the offense of robbery in that he, by the use of force and while armed with a dangerous weapon, took $12 in United States Currency from the person and presence of Elgin Richard Dickerson. The indictment described the offense as having taken place in County of Cook and State of Illinois. These charges were filed under the old Criminal Code, Illinois Revised Statutes 1961, chap 38, § 716.

In People v. Burns, 403 Ill 407, 408, 86 NE2d 197, the court said:

"The place of the commission of the offense of robbing a natural person need not be precisely laid or proved where the place of the commission of the offense is not an element thereof. The gist of armed robbery is the force or intimidation used in taking another's property against his will. (Citing cases.) Under the charge laid, all the People needed to do was to prove Burns robbed Hopkins within the bounds of Cook County. The indictment is sufficient when it is specific enough to notify Burns of the charge he had to meet and enable him to prepare his defense."

258

See also People v. Starr, 50 Ill App2d 399, 200 NE2d 118.

The record discloses that the defendant proceeded to trial being fully aware of the exact nature of the charges against him.

■ ■ The defendant relies on the case of People v. Williams, 30 Ill2d 125, 196 NE2d 483, which held that an indictment charging defendants with attempting to break and enter a factory building, without giving a street address or more specific location in the county, was insufficient. In the Williams case, supra, the place of commission of the offense was an element thereof. In an armed robbery case the location is not an element as set forth in the Burns case, supra. Furthermore, our Supreme Court in the case of People v. Blanchett, 33 Ill2d 527, 212 NE2d 97, has overruled People v. Williams, supra.

We now come to the second point raised by the defendant. Defendant argues that during the closing arguments the State's Attorneys persistently insinuated that the defendant was a professional subway thief. The evidence regarding this offense was the following:

Elgin Dickerson, the complaining witness, left work about 1:00 a. m. on August 18, 1962, at the Sherman House hotel. He took a northbound El at State and Lake Streets to Wilson Avenue. He later took a south bound El from Wilson Avenue to go home at about 1:45 a. m. He was seated in the rear of the second car in the last seat on the left hand side next to the window. Dickerson had fallen asleep and was awakened after the El left the Clark and Division station. Upon awakening he noticed that a man sitting next to him on his right had his right hand inside Dickerson's coat. Dickerson grabbed the man's hand and told him to get his hand out of his pocket. As the man's hand came out of Dickerson's pocket he had a $10 bill and two $1 bills. Dicker-

son stood up and told the man to give him his money. The man said it was not Dickerson's money, that it was his money. Dickerson reached for the money and a fellow sitting opposite across from Dickerson got up, reached over and pushed Dickerson back. Dickerson pushed the second man back and said "Give me my money." The first man drew a blue, short revolver and Dickerson sat down. The man was standing right beside Dickerson and Dickerson had turned to his right and was facing the man. The lighting conditions on the train were good. The man was wearing brown trousers, a blue shirt, a light green jacket and a hat with a small brim. He had a gold tooth and a gap between his teeth. Dickerson observed both men about two to two and a half minutes. Both men backed up to the door and got off the El at the Chicago Avenue stop. Dickerson later pointed out Clifford Allen as the man who had the gun. He testified that he had seen Allen about a week before the occurrence, on a subway train about 2:00 o'clock in the morning. On that occasion Dickerson was sitting on the subway when the defendant sat down beside him and asked Dickerson for a cigarette.

Robert McElroy, a C. T. A. police officer, testified that on August 27, 1962, he and his partner, Edgar Gillespie, arrested the defendant on a northbound subway train in the vicinity of the Harrison and State subway station about 2:00 a. m. The defendant had on a black shirt, grayish jacket, brown pants and a gray fedora hat. He had wide-spaced teeth that sort of protruded and a gold capped tooth. The defendant was then arrested and charged with attempted theft, and on September 12, 1962, was discharged as to that offense. McElroy had Dickerson sign the complaint against the defendant before the other case was heard on September 12, 1962.

The defendant contends that the arguments made by the Assistant State's Attorneys were so prejudicial

as to require reversal. One of the Assistants in closing argument said:

> "When the Officers arrested him he said he was unemployed. You heard from the stand at least four different times, or three different times, that he was on the El at 2:00 o'clock or 2:30 early in the morning. I submit to you, he was working, he was not unemployed, he was working those Els."

Another Assistant State's Attorney said the following:

> "The defendant tells you he was arrested on the 20th on some other matter by two colored CTA men, and then these two CTA men arrested him on the 27th, when they observed him sitting next to somebody else and trying to steal from somebody else."

Again, one of the Assistants in closing argument made the following statement:

> "Apparently, the procedure or modus operandi is to sit next to people who are sleepy or tired and pick their pocket without their even knowing it. He doesn't need a gun to do this, it is only when he is caught or somebody wakes up he pulls it out, as he did with Mr. Dickerson."

The foregoing arguments to the jury were not objected to.

In People v. Winters, 29 Ill2d 74, 193 NE2d 809, the defendant urged error based upon the argument made by the State's Attorney. On page 80 the court said:

> "No objections to the argument were made at the trial of the cause where defendant was represented by counsel of his own choosing, nor was complaint made regarding it in the motion for a new trial.

Under such circumstances, the alleged error is not reviewable."

In the instant case none of the foregoing statements were objected to by the defendant during the trial. The State's arguments were based upon the following bits of evidence:

Dickerson testified that on August 11, 1962, the defendant briefly sat near him on a late night subway.

On August 18, 1962, Dickerson was robbed at gun point by the defendant as he sat near him on the late night subway.

On August 20, 1962, the defendant admitted that he was arrested by two "colored" CTA officers on the subway.

On August 27, 1962, Officers McElroy and Gillespie arrested the defendant as he seated himself next to a sleeping passenger on the subway and began to "go through his pockets."

 It is indisputable that the State may comment on facts in evidence and may draw reasonable inferences from the facts. People v. Gleitsmann, 384 Ill 303, 51 NE2d 261.

It is also contended by the defendant that a statement was made by one of the Assistant State's Attorneys to the following effect:

He (meaning defendant) is a 28 or 29-year-old man who rides the El at 1:00 and 2:00 o'clock in the morning going to some cocktail lounge on State Street and who is in my opinion, and I submit to you, a thief, not a poor little kid with no clothes who only has the Public Defender.

The defendant contends that an Assistant State's Attorney in his remarks to the jury cannot state his own opinion of the guilt of the defendant. Citing People

v. Anderson, 406 Ill 585, 94 NE2d 429; People v. Lettrich, 413 Ill 172, 108 NE2d 488; People v. Black, 317 Ill 603, 148 NE 281.

■ While the Assistant used the words "in my opinion" we do not under the facts of this case consider that any more was being done than arguing the evidence which clearly showed that the defendant was a thief. The argument complained of came only after the facts had been explained to the jury.

In People v. Williams, 26 Ill2d 190, 186 NE2d 353, the prosecutor concluded his final summation in the following language: ". . . then coupling all that with statements made by defendant, I think that when you go back there, you will reach the same conclusion that we have reached, and that is that Eddie Williams is guilty of the charge of murder." In that case like the present case no objections were made to remarks at the trial but the defendant contended that they were in violation of the rule which prohibits a State's Attorney from expressing his personal opinion of guilt and require reversal. The court on page 193 said,

> "It is, however, proper for a prosecutor to argue or express his opinion that the accused is guilty, where he states, or it is apparent, as was true in this case, that such opinion is based solely on the evidence. People v. Lawson, 331 Ill 380, 394; People v. Black, 317 Ill 603; 15 ILP, Criminal Law, sec 586."

■ A characterization of the defendant, where reasonable and accurate, is permissible under Illinois law. In People v. Dear, 286 Ill 142, 121 NE 615, the defendant was characterized as a "murderer" in a murder case. In People v. Boneau, 327 Ill 194, 158 NE 431, the defendant was characterized as a "fence for thieves," in a prosecution for receiving stolen property. In People v. Halteman, 10 Ill2d 74, 139 NE2d 286, the defendant was characterized as a "moron" in an indecent liberties case.

263

In all of the foregoing cases the courts held that arguments and statements based on facts appearing in the proof or on legitimate inferences deducible therefrom do not transcend the bounds of legitimate argument. To express an opinion, as was done in this case, which was based upon facts in the record, could not have inflamed the jury after having heard the testimony in this case.

Much of the evidence as to other occurrences was brought out by the defendant himself while on the witness stand, and none of such testimony, whether brought out by the defendant or the State, was objected to. None of the argument here complained of was objected to by the defendant during the trial. The cases cited by the defendant, are, in our opinion, not controlling in this case.

Judgment affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.