THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES ALFRED WHITAKER, Defendant-Appellant.

Third District    No. 79-916

Opinion filed August 14, 1980.—Supplemental opinion filed on denial of rehearing August 28, 1980.

Robert Agostinelli and Charles Hoffman, both of State Appellate Defender's Office, of Ottawa, for appellant.

Jeffrey W. O'Connor, State's Attorney, of Cambridge, for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from an order of conviction entered after a jury trial by the Circuit Court of Henry County. Defendant was found guilty of two counts of armed violence, aggravated battery and reckless conduct. He was sentenced to six years' imprisonment on one count of armed violence.

In the early morning hours of May 3, 1979, Roberta Fox left her home in Geneseo, Illinois, to pick up her husband, who was working in Bettendorf, Iowa. She drove to Route 92 where she turned west. She had driven one-quarter mile when she saw a car with its bright lights on approaching her from behind at a high rate of speed. The car remained behind her from 20 to 30 seconds and then pulled out as if to pass. The car remained next to her for 10 to 15 seconds. She turned to look at the other driver when a shot shattered her window and struck her in the chin. Fox did not see the other driver but did notice that his car was gold in color with a strip of white paint on the right front quarter.

Fox drove to Joslin, Illinois, where she was stopped at a railroad crossing by a passing train. She sought help from another motorist, Virginia Lively, who was also stopped at the crossing. After Fox entered Lively's car, Lively drove across the tracks after the train passed, pulled into a driveway, and shut off her headlights. She saw a gold car cross the tracks, drive to the Illini Beef Packing Plant and turn around to come back. Lively backed onto Route 92 to drive away. Fox then saw a gold car and a police car stopped on the road near her car.

Trooper Wally White was on duty in Henry County when he received a radio transmission that some people were being harassed by an armed black man in a gold Continental at the Illini Beef Packing Plant in Joslin, Illinois. White saw the Continental drive away. The driver, who White identified as the defendant, failed to stop immediately upon White's signal. When the Continental finally stopped, White left his squad car and approached defendant's car. Defendant, who remained inside his car, turned to White and said, "Where am I? I'm going home. I've got to get to work." Defendant tried to drive away, but White was able to prevent it. White noticed a gun on the seat beside defendant.

The defendant told Department of Law Enforcement Agent John Gully that while he was driving to his home in East Moline he was forced off the road by a truck which struck his car causing damage to the right front of his car. Defendant had no clear recollection of what happened after that.

At trial defendant testified that he had been drinking in Rock Island for several hours on May 2, 1979. When he decided to go home he drove onto Interstate 74. Defendant then testified about some trouble in traffic with several cars. He complained that the drivers of those cars were driving erratically and he was merely trying to escape from them. Defendant pulled off the road, removed the gun from the trunk and fired a warning shot. He got back into his car, approached one of the cars and fired another shot. He drove to Joslin and realized he was lost. He drove back to the highway and saw a car driving slowly. He slowed and tried to pass. The car kept pace with him as he accelerated and slowed. He fired a shot to warn the car off and then sped away. He was still lost when he turned around at the Illini Beef Packing Plant. His only reason for shooting was to frighten the other drivers, not hurt them.

The other drivers testified that defendant bumped their cars with his, drove erratically and tried to force them off the road and shot at their vehicles. They drove to the Illini Beef Packing Plant where they called police.

Dr. Paul Hauck, a clinical psychologist, testified for the defendant. Hauck received a Ph.D. degree from the University of Utah, practiced full time for 26 years, and also taught psychology at the University of Utah, Marhot State, Bradley and St. Ambrose College. He was consultant at Franciscan Mental Health Center and Hospital in Rock Island and had written 30 articles and 10 books on psychology. He also had lectured to the American Psychiatric Association. He had been involved in diagnosing and treating such mental illnesses as psychosis and schizophrenia when he was chief psychologist at the Illinois State Hospital.

Hauck performed a psychological study on defendant, which included administering intelligence and personality tests. On the basis of his

study, Hauck diagnosed defendant as a hystryonic personality, an emotional disorder listed by the American Psychiatric Association. Hauck testified that he considers hystryonic personality to be a mental disease. A person with that disorder does not know how to control his emotions in a stressful situation. The use of alcohol can produce a reaction in a person with such a disorder. A person with a hystryonic personality is not a psychotic and when not under the influence of drugs or stress can be a very well-thinking person. In a situation such as the one which occurred on May 3, 1979, a person with a hystryonic personality would lack the substantial capacity to appreciate the criminality of his conduct or to conform to the requirements of the law. Hauck found no evidence of neurological dysfunction and performed no medical tests to determine if there were any psychological problems.

Two witnesses called by defendant testified that he had a reputation for being a peaceful and nonviolent person.

During his closing statement the prosecutor argued that Hauck was not a psychiatrist and therefore his testimony should be disregarded. The prosecutor also argued that the best evidence of a person's sanity is not the testimony of an expert but the testimony of people who had known him over a period of time. Defense counsel's objection was sustained.

The prosecutor also stated that he did not believe defendant's conduct was caused by his hysterical personality. He stated that defendant's story was unbelievable and that he did not believe fear entered into defendant's actions toward Roberta Fox. Defense counsel's objections were overruled by the trial court, who stated that the prosecutor "has a right to his beliefs."

■■ On appeal defendant argues that he was denied his constitutional right to a fair trial by improper remarks of the prosecutor in closing argument. He also argues that the trial court erred in denying a motion to vacate convictions because all four offenses of which defendant was convicted arose from the same physical act. The State has conceded that the trial court erred in denying the motion. Where more than one charge arises from the same physical act, only the conviction for the greatest offense may stand (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273), even though no sentence is entered on the lesser offenses (*People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1).

Defendant contended that he was insane at the time he committed the offenses charged in the information and therefore could not appreciate the criminality of his conduct or conform to the requirements of the law. He introduced testimony of Dr. Paul Hauck, a clinical psychologist, to support his insanity defense. During his closing argument the prosecutor asked the jury to disregard Dr. Hauck's testimony because he was a psychologist, not a psychiatrist. He argued that Hauck's opinion expressed after a hypotheti-

cal question was incompetent because it lacked "the medical ingredient—psychiatry—neurological examinations."

The Illinois Supreme Court has recognized a trend to allow "a properly qualified psychologist to testify as to the nature and results of psychological tests administered by him, particularly where those tests have been performed at the request of a psychiatrist and for the purpose of use by the latter in diagnosing an individual's mental condition." (*People v. Noble* (1969), 42 Ill. 2d 425, 433, 248 N.E.2d 96, 101.) The supreme court found that many jurisdictions recognize the value of psychological testing and treatment and therefore are inclined to accept psychologists as experts. Some even admit the opinions of psychologists as to the mental condition of an individual, if the psychologist is properly qualified. (*People v. Noble.*) We believe, as the supreme court strongly suggested, that a properly qualified psychologist may give an opinion of defendant's mental condition.

■■ ■ Dr. Hauck has impressive qualifications, including his years of practice, his teaching, his authorships, and his position as chief psychologist at the Illinois State Hospital. We find that he was properly qualified to give an opinion of defendant's mental condition. We have carefully examined the closing argument in the instant case. We believe that the prosecutor's remarks were directed to Hauck's credibility rather than his qualifications or his expert opinion. While the prosecutor's choice of words is lamentable, we do not find them to be error.

The prosecutor also argued that the best evidence of defendant's mental condition was the testimony of his two character witnesses. The trier of fact determines the credibility of the witnesses. (*Diversey Liquidating Corp. v. Neunkirchen* (1939), 370 Ill. 523, 19 N.E.2d 363.) No witness is inherently more credible either because he is an expert witness or because he is a lay witness. (31 Am. Jur. 2d *Expert & Opinion Evidence* §181 (1967).) Counsel may, however, argue that one witness is more believable than another as long as his argument is based on the evidence or reasonable inferences to be drawn from the evidence. (*People v. Sinclair* (1963), 27 Ill. 2d 505, 190 N.E.2d 298.) In the instant case, we find that the prosecutor included in his remarks several references to the evidence. He argued that one of the character witnesses had lived with defendant for a period of time with ample opportunity to observe defendant's behavior. The prosecutor then compared this with the time Hauck spent with defendant and his opportunity to observe defendant's behavior. Again, we find that these remarks were directed toward credibility. The prosecutor's reference to best evidence was merely a suggestion to the jury that they consider his argument when determining the credibility of the witnesses.

The prosecutor also told the jury that he did not believe defendant's testimony or his evidence. The prosecutor speaks with the authority of the

State. He must take great care that he does not prejudice the defendant to the extent that he affects the jury verdict. (*People v. Fain* (1976), 41 Ill. App. 3d 872, 355 N.E.2d 61.) A prosecutor may express opinions and may even use invective to express those opinions. (*People v. Allen* (1966), 73 Ill. App. 2d 256, 219 N.E.2d 653.) He may not, however, express an opinion which is not based upon the evidence. *People v. Ostrand* (1966), 35 Ill. 2d 520, 221 N.E.2d 499.

In the instant case, the prosecutor did preface his remarks by saying that he would, "interpret the facts as in my opinion I believe they are told from the stand here." We believe that his remarks were within the proper limits of argument. The prosecutor reminded the jury that defendant's actions and his alleged insanity were contradictory. Defendant testified that he feared the actions of the other drivers and civil suits by them and he only wanted to escape from them. His defense was that he did not appreciate the use of a gun. This is what the prosecutor called unbelievable. We find his remarks permissible in that context.

For the reasons stated above the judgment of the Circuit Court of Henry County is hereby affirmed.

Affirmed.

ALLOY, P. J., and BARRY, J., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE SCOTT delivered the opinion of the court:

An opinion in this case was filed by this court on August 14, 1980, which affirmed the trial court's conviction of the defendant on two counts of armed violence, aggravated battery and reckless conduct. Subsequently, on August 19, 1980, the defendant filed a petition for rehearing in which it is alleged that this court failed to address the issue as to whether error was committed by the trial court when it denied a motion to vacate certain convictions, to wit, a conviction for one count of armed violence and the conviction for aggravated battery and reckless conduct, since they all arose from the same physical act.

In the opinion of August 18, 1980, this court noted the issue of multiple convictions arising from one act, however, did not resolve the same. The contention of the defendant is well taken and the State concedes its correctness. (See also *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) Accordingly this court vacates the defendant's conviction on one count of armed violence and the conviction for aggravated battery and reckless conduct. The

defendant's conviction for the one remaining count of armed violence and the sentence imposed thereon are affirmed.

Having supplemented the opinion heretofore entered by this court on August 14, 1980, the defendant's petition for rehearing is denied.

Affirmed as modified by this supplemental opinion and petition for rehearing denied.

ALLOY, P. J., and BARRY, J., concur.