THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVEN MYERS, Defendant-Appellant.
First District (4th Division) No. 1—88—1531

Opinion filed December 31, 1991.

Michael J. Pelletier and Pamela Z. O'Shea, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Mary Brigid Kenney, and Maria Kuriakos, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a jury trial in the circuit court of Cook County, defendant, Steven Myers, was found guilty of attempted murder (Ill. Rev. Stat. 1987, ch. 38, pars. 8—4, 9—1), armed robbery (Ill. Rev. Stat. 1987, ch. 38, par. 18—2), burglary (Ill. Rev. Stat. 1987, ch. 38, par. 19—1), aggravated battery (Ill. Rev. Stat. 1987, ch. 38, par. 12—4), and armed violence (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2). Defendant was sentenced to concurrent terms of 13 years for attempted murder, 13 years for armed robbery, and 7 years for burglary.

On appeal, defendant contends that (1) he was denied a fair trial where the prosecutor made improper statements in attempting to question the credibility of his testimony; and (2) the trial court erred by allowing the prosecutor to question him about a form he had completed for unemployment compensation; moreover, the prosecutor committed an error in conduct by going beyond the limitation imposed by the trial judge in questioning concerning the information on the unemployment form.

We affirm.

Complainant, John Ziemann, testified that he went to the Tasa Lounge, located on the north side of Chicago, on the evening of April 19, 1987, Easter Sunday. Defendant was tending the bar that evening. Complainant conversed with defendant and two female bartenders who were not working that evening. Complainant had brought between $50 and $60 to the bar that evening; he had $45 with him by the end of the evening. Complainant and defendant stayed until the bar closed, and they both left at the same time. Complainant was driving a red Volkswagen with a license plate that read "ALPENA."

Complainant testified that defendant entered his car by the passenger side and forced him to drive at knife point. He further stated that he gave defendant $45, his wallet, and his house keys. After driving around, they turned into an alley. Both men left the car and shortly thereafter defendant stabbed complainant in the right side of the neck. Complainant attempted to flee down the alley, shouting for help, but fell to the ground. Defendant then stood over him and lunged toward his eye with the knife. He was able to prevent the knife from going into his eye, but defendant stabbed him just below the right eye. Complainant was able to again free himself and began running toward the Jewel parking lot where he collapsed after seeing defendant enter his car. Defendant then attempted to run over complainant with complainant's car. Finally, complainant testified that defendant exited the car, walked over to him, picked him up from the ground by the collar, and stabbed him a second time in the neck. Defendant left the scene, driving complainant's car.

Juan and Maria Roman testified that they were awakened by screams for help. The witnesses stated that they saw a man get out of a car, lift a second man up by his shirt, and put him back on the ground. They also testified that while Juan Roman called the police, Maria Roman wrote down the car's license plate, "ALPENA." The Romans were able to see these events from their third-floor apartment window that overlooked the alley by Jewel food store.

Leonard Green, a paramedic, testified that as he followed a police car into a parking lot, where he attempted to aid complainant, he saw the red Volkswagen being driven away from the area. Complainant was taken to the hospital where he underwent surgery to repair the damage to his neck and under his right eye, and a broken collarbone.

Complainant was able to identify defendant from a police photograph. Defendant was then arrested and brought to Chicago from West Virginia. Thereafter, complainant identified defendant in a lineup.

Defendant testified in his own behalf. He stated that he was a part-time bartender at the Tasa Lounge; that the owner checked the amount of money coming into the bar; and that he had access to a loaded gun.

Defendant further testified that as he began to walk to his apartment, on the evening in question, complainant drove alongside him and offered him a ride. While in the car, complainant told him that he was a "nice-looking" man and that he had been watching him for several weeks. Complainant denied defendant's request to be let out of the car and, according to defendant, he then reached over and grabbed defendant in the groin area. Defendant testified that he responded by hitting complainant near his right eye.

Defendant stated that he was finally able to get complainant to stop the car in an alley by pretending to have to "use the rest room." Defendant got out of the car. Then complainant came up behind him and offered him money if he would "be with him." Defendant refused the offer and would not return to the car. At that point, complainant became enraged, pulled out a pocket knife, and a struggle ensued. The witness stated that he was able to grab the knife when it fell to the ground. He further stated that when complainant came at him, he feared for his life; therefore, he swung the knife at complainant in self-defense. Complainant then fell to the ground, screaming for help. Defendant decided to use complainant's car to leave the scene. Before leaving, he got out of the car, lifted complainant to see if he was still alive, and then put him down again before driving away.

Defendant also testified that when he arrived at his apartment he awakened his roommate, Howard Walls, and told him about the fight and about complainant's attempt to fondle him. They talked in detail the next day, and Walls convinced defendant to leave the State without contacting the police. Defendant testified that he was too frightened to call the police and that he stayed with Walls' ex-wife for a week. Walls gave his ex-wife some money to give to defendant, and defendant used the money to buy a bus ticket to West Virginia, where his mother resides.

The jury found defendant guilty of attempted murder, armed robbery, burglary, aggravated battery, and armed violence. This appeal followed.

The standard to determine the sufficiency of the evidence in criminal cases is proof of guilt beyond a reasonable doubt. (*People v. Pintos* (1989), 133 Ill. 2d 286, 291.) The reviewing court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essen-

tial elements of the crime beyond a reasonable doubt." (*People v. Wilson* (1991), 143 Ill. 2d 236, 246, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573-74, 99 S. Ct. 2781, 2788-89.) Applying this standard, we find that the evidence presented in the case at bar was sufficient to support defendant's convictions.

Defendant contends that the prosecutor's "tailoring" argument constituted plain error, thus depriving him of a fair and impartial trial. The plain error exception to the waiver rule is as follows:

> " 'The purpose of the plain-error doctrine is to correct serious errors which may have denied the accused a fair trial. [Citation.] The doctrine will be applied in criminal cases if the evidence was closely balanced or the alleged error was so serious that it deprived defendant of a fair trial.' " *People v. Judge* (1991), 221 Ill. App. 3d 753, 759, quoting *People v. Priola* (1990), 203 Ill. App. 3d 401, 417.

See also 134 Ill. 2d R. 615(a).

The State's response is that assuming, *arguendo*, the statements were improper, the plain error rule still does not apply because the evidence was not closely balanced. The trial court found that the evidence was overwhelmingly in favor of complainant. We agree.

When the police arrived on the scene, complainant had fainted and did not regain consciousness until later in the hospital. Dr. Ritterberry, the emergency room physician, testified as to complainant's condition when he arrived at the hospital. Paramedic Leonard Green arrived at about the same time as the police and testified as to complainant's condition at the scene of the crime. At the police station, complainant identified defendant in a photo mug book and again in a five-person lineup.

Mr. and Mrs. Juan Roman were able to see some of what took place from their third-floor apartment window, which faced the Jewel food store's parking lot. They saw a man lying on the ground. Then they saw the second man get out of a car with the license plate "ALPENA." He walked over to the man on the ground, picked him up by his shirt, and put him back down. Then this same man returned to the car and drove away.

There were two witnesses testifying for defendant. One witness was the owner of the Tasa Lounge. He testified that defendant had never stolen from him or attacked a customer. The other witness for the defense was a barmaid who had stayed at the bar to visit with a friend after defendant relieved her at the end of her shift. The barmaid testified as to her impressions of complainant as he sat at the bar that evening. She thought that he "didn't sound right" and that

"he talked more like a woman." Defendant testified in his own behalf; yet, no one was able to corroborate his testimony. He claimed that he was propositioned by complainant and that he injured complainant only as a result of trying to defend himself.

Defendant also testified that he told his roommate, Howard Walls, that he was in a fight with a man who had tried to fondle him and that he had cut the man. However, his roommate testified for the State, and his testimony was that defendant told him he tried to "roll" a man with a lot of money who was at the bar, and that he left him for dead in an alley behind Jewel food store.

Defendant contends that the prosecutor's statements comparing defendant's testimony to that of the State's witnesses resulted in a violation of defendant's sixth amendment right to be present at trial. Defendant argues that these errors have a cumulative effect that should result in reversible error. "[T]rial errors may have a cumulative effect when considered together." (*People v. Albanese* (1984), 102 Ill. 2d 54, 83.) However, defendant has not shown this effect in the case at bar.

Defendant maintains that the prosecutorial comments were such that they encouraged the jury to become advocates of the victim and, thus, distracted the jury from weighing proper factors. Broad discretion is given to a prosecutor with respect to the discussion of witnesses and their credibility. "A prosecutor may express opinions and may even use invective to express those opinions. [Citation.] He may not, however, express an opinion which is not based upon the evidence." *People v. Whitaker* (1980), 87 Ill. App. 3d 563, 568.

The trial court found that the prosecutor's opinions were based on the evidence. Defendant's decision to testify in his own behalf allowed for him to be judged as to the credibility of his statement, as is the custom with other witnesses. (*People v. Malmenato* (1958), 14 Ill. 2d 52, 59.) We find that the trial court did not abuse its discretion in this regard.

Defendant specifically alleges that the comments made by the prosecutor during closing argument were improper. Some of the statements at issue are as follows:

> "Now, he [defense lawyer] has thrown a lot of mud on the wall against Mr. Ziemann. Portraying Mr. Ziemann as some kind of homosexual molester who happened to use force on this 24 year old ex-Marine.
>
> * * *

Mr. Ziemann was victimized on the street when he was knifed and robbed. And he was victimized in this courtroom by this defendant. Right here. Myers.

He knows and knew what was coming up in this courtroom so he has got to do something. Let's portray the man whos [sic] 55 years old, single, victimized on the street, victimized in here.

That's why it is frustrating to be a victim ladies and gentlemen. If your [sic] a rape victim, well, then your [sic] abducted off the street and raped. Well, then you must be a prostitute. Your [sic] 55 years old, you get robbed on the street, well, your [sic] a homosexual."

■ The trial court found that the evidence presented was overwhelmingly in favor of complainant and that the prosecutor's closing argument was permissible. This finding is supported in *People v. Hine* (1980), 88 Ill. App. 3d 671, where the court stated that "a prosecutor is permitted great latitude in his closing argument [citation], and the trial court's determination of the propriety of the closing argument will generally be followed absent a clear abuse of discretion." (*Hine,* 88 Ill. App. 3d at 679.) Further, in the case at bar, the trial judge cured any prejudice to defendant with his jury instructions concerning opening statements and closing arguments. They are as follows:

"Opening statements are made by the attorneys to acquaint you with the facts they expect to prove. Closing arguments are made by the attorneys to discuss the facts and circumstances in the case and should be confined to the evidence and to reasonable inferences to be drawn from the evidence. Neither opening statements nor closing arguments are evidence and any statement or argument which is not based on the evidence should be disregarded."

A similar argument was presented in *People v. Faysom* (1985), 131 Ill. App. 3d 517, where the defendant argued that the trial court errors prejudiced his right to a fair trial. In that case, a jury found the defendant guilty of murder, armed violence, unlawful restraint and pandering. The defendant cited various incidents of prosecutorial misconduct. Among other contentions, the defendant claimed that the prosecutor made references to the victim's family, improperly related facts not in evidence, and expressed his personal opinion regarding the defendant's guilt and regarding the credibility of a witness. The court responded as follows:

"Certain remarks made here were improper; however, on balance, defendant was not thereby deprived of a fair trial. In view of the compelling evidence of defendant's guilt, the re-

marks could not have been a material factor in his conviction nor would the verdict have been different in their absence." (*Faysom*, 131 Ill. App. 3d at 525.)

Given the compelling nature of defendant's guilt in the case at bar, any constitutional errors would have to be deemed harmless. *People v. Arman* (1989), 131 Ill. 2d 115, 127, citing *United States v. Hasting* (1983), 461 U.S. 499, 510-11, 76 L. Ed. 2d 96, 107, 103 S. Ct. 1974, 1981.

Defendant contends that even though defense counsel did not object at trial, this court should recognize the prosecutorial misconduct as plain error since the evidence was not overwhelming. As we have stated, the trial court held to the contrary and we do not consider its finding an abuse of discretion. The law concerning issues on appeal is clear: "[T]he presence of both a trial objection and a written post-trial motion raising the issue are necessary to preserve an issue for review." (*People v. Enoch* (1988), 122 Ill. 2d 176, 186; see *People v. Thomas* (1991), 215 Ill. App. 3d 751.) Further, the written motion for a new trial should specifically state the grounds therefor. (Ill. Rev. Stat. 1989, ch. 38, par. 116—1.) Defendant raised no objections to the comments at trial nor did he raise the issue in his motion for a new trial.

Given the evidence presented at trial, we find that the plain error exception to the waiver rule is not applicable to the case at bar. Further, we hold that the trial court did not abuse its discretion in finding that the evidence presented was overwhelmingly in favor of complainant.

■ Defendant's second argument on appeal is that the trial court erred in allowing the prosecutor to question him about an unemployment application that he had completed and that the prosecutor committed an error in conduct by ignoring the trial judge's warning not to elicit testimony that implied defendant had lied on the application. Defendant contends that the prosecutor's questioning concerning the form was more prejudicial than probative. As with the first issue, defendant had the opportunity to object at trial and to specifically preserve the issue with a written motion for a new trial. However, defendant chose neither of these options; therefore, the issue is waived on appeal. *People v. Enoch* (1988), 122 Ill. 2d 176, 186; see *People v. Thomas* (1991), 215 Ill. App. 3d 751.

Defendant contends that the information elicited by the prosecutor with respect to the unemployment compensation form was irrelevant and an improper attempt to impeach defendant's testimony that he was afraid to contact anyone after the incident. The scope of cross-

examination is quite broad. "[W]here a witness' credibility is a crucial issue, the trial court should permit the parties wide latitude in impeaching and rehabilitating the witness' credibility so that the jury can gain access to all the necessary information and impressions in order to accurately evaluate credibility of the witness." *People v. Fairbanks* (1986), 141 Ill. App. 3d 909, 915.

A side-bar was called in response to the prosecutor's questioning concerning the unemployment compensation form that defendant had completed 10 days after the attack. During the side-bar, the judge decided to allow the prosecutor to question defendant about the form in a limited fashion. Questioning as to defendant's alleged crime of lying on the unemployment compensation form was forbidden. The prosecutor's questioning was in support of the State's argument that defendant lied about being too frightened to call the police after he attacked defendant. The State wanted to support its theory by showing that defendant was not too afraid to look for work. The trial court found that the prosecutor's questions were within the scope of relevant cross-examination. The trial court did not abuse its discretion in finding that the conduct of the prosecutor was proper with respect to questioning and closing argument.

For the foregoing reasons, we affirm the ruling of the trial court.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.