THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN HART, Defendant-Appellant.

(No. 54079;

First District—March 2, 1971.

Gerald W. Getty, Public Defender, of Chicago, (Herbert Becker and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Richard Pezzopane, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE LEIGHTON delivered the opinion of the court:

Defendant was charged with burglary. He waived trial by jury, was found guilty and sentenced to serve seven to thirty-five years. In this appeal, he contends: (1), the evidence did not prove beyond a reasonable doubt that he committed burglary; and (2), because it is too severe, the sentence should be reduced.

The material evidence discloses that on December 16, 1968, Transoceanic Terminal Corporation owned a riverfront warehouse which had 38 doors, each equipped with burglar alarm plugs. The sides of the building were of sheet metal. Steel, whiskey and wine were stored in the building. Inside, was a cage in which, customarily, whiskey and wine cases were stacked. On November 28 the terminal received an 800 ton shipment of wine. All of it could not go into the cage. Therefore, a part of the shipment was stacked outside the cage but inside the warehouse.

At about 5:30 A.M. a burglar alarm went off. Two security guards responded. "Crouched down" behind some coils of steel they found the defendant. With him was a man named Martin. An inspection disclosed that all doors of the warehouse were locked. According to one of the guards, when they asked him, defendant said he entered the building through a hole caused by the outside sheet metal being pulled back about two feet; and that he and his companion were "[t]here looking for a job or something." Later, the chief of security looked near the hole. Eight or ten feet from it were "[a]pproximately ten or twelve cases of wine stacked away there." Defendant was taken into custody and charged with burglary of the warehouse.

At his trial he testified that on the morning of December 16 he was to work at Transoceanic's terminal as a longshoreman. At about 5:40 A.M., he and a James Byrd, whom he took to Transoceanic to look for a job, left a restaurant, took a bus to the warehouse where, shortly before 6:00 A.M., they tried to enter. They discovered, however, that the doors were locked. They found a hole, made, he said, by wire coils and stacks of steel being pushed against the sheet metal siding. Because of the weather, defendant said that he and his companion went inside "[t]o get into a dressing room and get out of the cold." Defendant explained he crouched behind the coils of steel when he saw the guard "[r]unning down there where we was with his gun out, yelling and hollering going on and I didn't know what was going on [sic]."

As part of its rebuttal, the prosecution introduced five exhibits. These showed that in 1943 defendant was convicted and sentenced to serve one to ten and two terms of one to life for three felonies: larceny from the person and two armed robberies. In 1945, on his plea of guilty, he was convicted and sentenced to serve four to seven years for robbery. In 1954, after trial by jury, he was convicted and sentenced to serve five to thirty-five years for a robbery in which he had a confederate armed with a pistol to aid and assist him. After hearing the evidence and holding a hearing in aggravation and mitigation, the trial judge found defendant guilty.

To support his contention that he was not proven guilty of burglary, defendant argues that the indictment allegation "[h]e without authority, knowingly entered into the warehouse of Transoceanic Terminal Corporation, * * *" was a material one that had to be proved beyond a reasonable doubt. He points to the record and argues that the evidence did not prove his entry into the warehouse was without authority. Defendant buttresses this argument with the fact that he worked for Transoceanic as a longshoreman. This, defendant says, is the principal reason for his insistence that his entry into the burglarized warehouse was with authority.

This argument hypothesizes that the relation of employer—employee gives an employee authority to enter his employer's premises at any hour of the day and by any means. Assuming the evidence proved defendant was a Transoceanic employee on the day of the burglary (a fact not clear in the record), it appears he was to begin work at 7:50 A.M. His work was that of a longshoreman. The doors of the warehouse were locked. He did not have a key. Thus, even were he an employee of Transoceanic, defendant did not have unlimited access to the warehouse. ■■ It is generally said that unlimited consent given an employee to enter the premises of his employer is a defense to a charge of burglary. (See *People v. Myler*, 374 Ill. 72, 28 N.E.2d 83.) However, concerning the right of an employee to enter premises of the employer, consent, either stated or implied, but limited as to place, time or purpose, is not a defense where entry occurs outside the limitation. (See Annot., 93 A.L.R. 2d 531, 537 (1964).) Therefore, proof that at 5:40 A.M. on December 16, 1968, defendant, through a hole in the wall, entered Transoceanic's warehouse when all the doors were locked, proved beyond a reasonable doubt that he entered the burglarized premises without authority.

Defendant also argues that the evidence failed to prove he entered the warehouse with intent to commit theft. Intent to steal, he points out, is the gravamen of the offense of burglary. Intent must be proved. Defendant insists that this element of burglary cannot be inferred. He cites

*People v. Soznowski,* 22 Ill.2d 540, 177 N.E.2d 146 and *People v. Ervin,* 342 Ill. 421, 174 N.E. 529. Neither case is in point. *Soznowski* was a burglary prosecution in which the defendant did not commit any overt act toward accomplishing his alleged intention to commit theft. *Ervin* was an embezzlement prosecution which turned on the point that mere failure to account for funds did not prove embezzlement.

■■ On the other hand, the case before us is one where two witnesses testified that the hole through which defendant entered the warehouse was not there before the burglary. A short distance from the hole were cases of wine, evidently put there by someone to facilitate their removal. As the court held in *People v. Johnson,* 28 Ill.2d 441, 443, 192 N.E.2d 864:

> "Intent must be ordinarily proved circumstantially, by inferences drawn from conduct appraised in its factual environment. We are of the opinion that in the absence of inconsistent circumstances, proof of unlawful breaking and entry into a building which contains personal property that could be the subject of larceny gives rise to an inference that will sustain a conviction of burglary. Like other inferences, this one is grounded in human experience, which justifies the assumption that the unlawful entry was not purposeless, and, in the absence of other proof, indicates theft as the most likely purpose. This conclusion is supported by the decisions of other courts. [Cases cited.]"

■■ Here, there are no inconsistent circumstances. Defendant's testimony raised questions of credibility. When he was found in the warehouse, he told the guard that he and his companion were there looking for a job. When he testified, he first said that he and his companion went in the warehouse to find the dressing room and see if one of the guards had a key to it. Then he said that he was taking a man named Byrd to see the foreman about a job. The man who was arrested with him was named Martin. Later, defendant said they entered the building to get out of the cold. His credibility was then impeached by proof that between 1943 and 1954 he was convicted of five infamous crimes. When the State's evidence is considered against defendant's weak, vacillating and impeached testimony, we conclude he was proven guilty of burglary beyond a reasonable doubt. *People v. Durham,* 66 Ill.App.2d 163, 212 N.E.2d 765.

In his last contention, defendant attacks the severity of his sentence. He argues that in the light of his employment record and the facts and circumstances of this case, the sentence of seven to thirty-five years should be reduced. He asks us to exercise the power we have under Supreme Court Rule 615(b) (4), Ill. Rev. Stat. 1969, ch. 110A, par. 615 (b) (4).

■■ Defendant concedes he committed the five infamous crimes proved by the State. Although he urges that he "[h]as been completely rehabilitated in the last 9 years," proof in the aggravation-mitigation hearing established that in 1954 defendant was sentenced to serve five to thirty-five years for a robbery in which he had an armed confederate. He was paroled in 1963. Elementary arithmetic compels the conclusion that on December 16, 1968 when defendant was found in the burglarized warehouse, he had been on parole for six years.

Ill. Rev. Stat. 1967, ch. 38, par. 1—7(g) provides:

[g] "Mitigation and Aggravation.

For the purpose of determining sentence to be imposed, the court shall, after conviction, consider the evidence, if any, received upon the trial and shall also hear and receive evidence, if any, as to the moral character, life, family, occupation and criminal record of the offender and may consider such evidence in aggravation or mitigation of the offense."

Prior convictions are relevant and pertinent in determining the appropriate sentence to be imposed. (*People v. Mace,* 79 Ill.App.2d 422, 223 N.E.2d 725.) A sentence that takes into consideration the criminal record of the offender is proper as long as the term imposed is within the statutory range of sentences required by law. (*People v. Heise,* 35 Ill.2d 214, 220 N.E.2d 438.) Imposition of a sentence is within the discretion of the trial judge, a discretion to be exercised within the minimum and maximum limits fixed by the legislature. *People v. Richeson,* 24 Ill.2d 182, 181 N.E.2d 170.

■■ It is apparent that in this case the trial judge took into consideration defendant's prior convictions and imposed a sentence within the limits of the burglary statute. We see no reason to disturb this exercise of discretion. We affirm the judgment.

Judgment affirmed.

McCORMICK and STAMOS, JJ., concur.