THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES E. WILLIAMS, Defendant-Appellant.

Third District   No. 3—83—0788

Opinion filed August 24, 1984.—Rehearing denied September 27, 1984.

Robert Agostinelli and Thomas A. Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

The defendant, James E. Williams, appeals following a jury trial in the circuit court of Will County where he was convicted of armed robbery, armed violence and aggravated battery. The defendant was concurrently sentenced to serve 15, 10 and 5 years for each respective offense.

On appeal, the defendant contends that (1) the trial court erred when it refused to permit the defense to impeach a prosecution witness with evidence that the witness was on supervision for an unrelated offense; (2) the prosecutor engaged in an improper and inflammatory rebuttal argument which denied the defendant a fair trial; (3) he was denied the effective assistance of counsel when his court-appointed counsel continued to represent him at the post-trial proceedings after he had complained of his attorney's trial performance; (4) his conviction for aggravated battery must be reversed because it was the underlying felony for his armed violence conviction.

The evidence indicated that on August 17, 1983, at approximately 9 p.m., Serena Walsh was walking along Patterson Road in Joliet on her way to pick up her car, which had been parked on South Chicago Street. As Ms. Walsh was walking down Patterson Road, she observed a man and a woman arguing about some children with another man, who was standing in the street under a streetlight. The man in the street, later identified as the defendant, was wearing a long-sleeved burgundy silk shirt and dark blue pants. Walsh had never seen the man before and kept walking.

Approximately a block from the scene of the argument, the defendant came up behind Walsh and asked her where she was going. Walsh was frightened and told him that she was going to the Sahara Lounge, which was just down the street. The defendant said he was going there, too, and continued walking next to Walsh.

As the two people continued down Patterson Road toward Chicago Street, it was necessary to pass under an unlighted viaduct with no sidewalk. In the dark viaduct the defendant grabbed Walsh by the arm and turned her around. He pulled a black gun from his pants and told Walsh to go into the weeds. When she refused, he struck her in

the face and head, first with his hand and then the gun. Walsh knelt in the street to prevent her attacker from dragging her into the weeds. Her assailant kicked her several times, and Walsh offered him her purse if he just wouldn't hurt her anymore. The defendant said he didn't want the purse, he wanted her in the weeds. Two cars passed during the attack but did not stop. After the second car passed, the defendant put the gun to Walsh's head. As a third car approached them, it began to slow down, and the defendant said, "Look what you did," and grabbed her purse and ran. The purse contained $20 and some personal items.

After the defendant fled the scene, Walsh went to a restaurant but told no one of the attack. She did not call the police and did not know who did. Her head had been noticeably cut, and she had other marks on her face. A friend at the restaurant drove her home. As they passed the viaduct where she had been attacked, she noticed a police car and asked the officer if he was looking for her. The officer replied that he was if she had been the woman who had screamed for help. Walsh then accompanied the officer to the scene of the original argument over the children and learned that the defendant had pulled a gun on the man and woman there, too.

Walsh later viewed a photographic array of pictures which had been arranged in random order on a desk at the sheriff's office. Walsh was not told that her assailant was included in the group or that she had to select someone. When she saw the defendant's picture, she pointed him out immediately as the man who had robbed and beaten her. Walsh later identified the defendant at trial.

Ronnie Payton testified for the prosecution that it was the defendant who had argued with him about the children in the street and had pulled a gun on him, then left by going down Patterson toward Walsh. Police records indicated that they had received a call regarding a complaint about the unlawful use of weapons on Patterson Road at 9:17 p.m. and the incident involving Walsh at 9:20 p.m. The defendant lived within three blocks of the scene of the crime.

The defense presented its theory of misidentification and an uncorroborated alibi, which was impeached by the introduction into evidence of the defendant's two prior convictions for armed robbery and theft.

The defendant's initial claim of error concerns the trial court's refusal to allow defense counsel to impeach a prosecution witness with evidence that the witness was on court supervision for retail theft, a misdemeanor.

Ronnie Payton had stipulated to the charge of retail theft and had

been placed on one-year court supervision. The trial court refused to allow the impeachment, since the status of supervision does not involve a conviction and may end with a dismissal of the charge. Ill. Rev. Stat. 1981, ch. 38, par. 1005—6—1(c).

■ We believe the trial court acted properly in refusing to allow court supervision to be used as a basis for impeachment. *People v. Mason* (1963), 28 Ill. 2d 396, 192 N.E.2d 835 (distinction between proof of conviction of a crime to impeach a witness' credibility and use of an arrest or an indictment as evidence of bias or interest on the part of the witness).

The statutory scheme for supervision provides that a successful termination of supervision does not result in a conviction, but is more closely akin to an acquittal. (*People v. Tarkowski* (1981), 100 Ill. App. 3d 153, 426 N.E.2d 631.) Clearly, a witness may not be impeached by the mere fact that he was on supervision. (*People v. Miller* (1981), 101 Ill. App. 3d 55, 427 N.E.2d 987.) The defendant concedes that Payton's supervision was effectively the same as having a criminal charge pending. As such, it was an improper basis for impeachment.

■ Next, the defendant contends that the prosecutor engaged in an inflammatory and prejudicial closing argument by referring to the defendant as a "leech on the street *** preying off other individuals"; accusing defense counsel of "making jokes" and "a mockery" of the system by telling stories and "dropping a smoke bomb" which would "confuse" the jury. While such name-calling was unnecessary, we note there were no objections to most of these remarks which would have enabled the trial court to instruct the jury to disregard all comments not based upon the evidence. We believe the defendant has therefore waived the alleged error, and none amount to plain error. *People v. Shepard* (1983), 114 Ill. App. 3d 598, 449 N.E.2d 222 (failure to object to prosecutor's remark calling defendant a "dog" held to be waiver).

A prosecutor has wide latitude during closing argument, and the trial court's determination regarding the propriety of the argument will not be overturned on appeal absent a clear abuse of discretion. (*People v. Richard* (1980), 88 Ill. App. 3d 247, 410 N.E.2d 459.) Improper remarks in closing argument will not constitute reversible error unless they result in substantial prejudice to the defendant. *People v. Kinion* (1982), 105 Ill. App. 3d 1069, 435 N.E.2d 533.

While remarks such as "smoke screen" or "veil of smoke" are analogous to the "smoke bomb" reference here and are better left unsaid, they are hardly of sufficient magnitude to justify a reversal. *People v. Palmer* (1970), 47 Ill. 2d 289, 265 N.E.2d 627, *cert. denied* (1971), 402 U.S. 931, 28 L. Ed. 2d 866, 91 S. Ct. 1532.

Following his conviction, the defendant filed a *pro se* post-trial motion alleging that his court-appointed counsel had rendered ineffective assistance to his defense by failing to excuse certain jurors whom the defendant claimed he wanted excused and citing the failure to ask certain questions of the witnesses. The defendant also claimed that trial counsel had not presented all the evidence which the defendant had wanted to present. The defendant claims that the trial court's refusal to appoint substitute counsel for the purpose of preparing and arguing a post-trial motion amounted to reversible error.

It is clear that no *per se* conflict of interest exists merely from a defendant's allegations of ineffective assistance of counsel. (*People v. Johnson* (1981), 98 Ill. App. 3d 228, 424 N.E.2d 610.) Actual incompetence which results in substantial prejudice without which the outcome of the trial would probably have been different must be demonstrated. (*People v. Ferguson* (1981), 99 Ill. App. 3d 779, 425 N.E.2d 582.) The alleged incompetency must consist of more than merely the defendant's disagreement with the trial attorney's choice of trial tactics or judgment. (*People v. Ferguson* (1981), 99 Ill. App. 3d 779, 785, 425 N.E.2d 582, 586.) A general complaint of the attorney's conduct is insufficient. *People v. Gustafson* (1979), 75 Ill. App. 3d 497, 393 N.E.2d 1315.

Our review of the record indicates that the defendant's allegations of ineffective assistance of counsel suffer from the same basic infirmity, *i.e.*, the general nature of the complaint, which lacks specificity as to (1) why certain jurors should have been excused, (2) what key questions in particular should have been asked by court-appointed counsel, (3) what additional evidence should have been presented.

Without such specificity, the trial court and certainly a reviewing court are left only to speculate in a vacuum as to what course the trial could have taken had the tactics and strategy of appointed counsel been different.

■ We believe, therefore, that an insufficient basis was shown by the defendant to require the appointment of substitute counsel, especially at such a late stage in the proceedings.

■ Finally, the defendant contends that his aggravated battery conviction should be vacated because it served as the underlying felony for the defendant's conviction of armed violence. We agree. (*People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477.) Under the circumstances of this case, the defendant's aggravated battery conviction is clearly a lesser included offense of his conviction for armed violence. *People v. Whitaker* (1980), 87 Ill. App. 3d 563, 410 N.E.2d 166; *People v. Lewis* (1981), 95 Ill. App. 3d 82, 419 N.E.2d 641.

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed with respect to the defendant's convictions for armed robbery and armed violence and reversed with respect to defendant's conviction for aggravated battery.

Affirmed in part, reversed in part.

STOUDER and HEIPLE, JJ., concur.