THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FELIX STUCKEY, JR., *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 1—87—2573, 1—87—3114 cons.

Opinion filed June 17, 1992.—Rehearing denied July 31, 1992.

GREIMAN, P.J., specially concurring.

Rita A. Fry, Public Defender, of Chicago (Henry L. Hams and Donald S. Honchell, Assistant Public Defenders, of counsel), for appellants.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Kathleen F. Howlett, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Following a jury trial, defendant, Felix Stuckey, Jr., was convicted of attempted murder (Ill. Rev. Stat. 1985, ch. 38, par. 8—4) and aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14). Defendant Stuckey was sentenced to a term of 60 years' imprisonment in the Illinois Department of Corrections. Defendant Bruce Davis received a bench trial and was found guilty of attempted murder (Ill. Rev. Stat. 1985, ch. 38, par. 8—4) and aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4). Defendant Davis was sentenced to a term of 40 years' imprisonment in the Illinois Department of Corrections.

The following issues are before this court for review: (1) whether the trial court erred when it ruled that the police had probable cause to arrest defendant Davis; (2) whether defendants were denied effective assistance of counsel and a speedy trial because defense counsel failed to move for a speedy trial discharge pursuant to the sixth amendment of the United States Constitution, article I, section 8, of the Illinois Constitution, and the Speedy Trial Act (Ill. Rev. Stat. 1985, ch. 38, par. 103—5(a)), or, in the alternative, if we find for the State on this issue, whether the trial court's ruling was against the manifest weight of the evidence giving defendants the right to obtain specific performance of an alleged pretrial agreement; (3) whether the cumulative impact of prosecutorial comments during closing arguments violated defendants' rights to a fair trial and due process of law guaranteed by the sixth and fourteenth amendments of the United States Constitution; (4) whether defendants were proven guilty beyond a reasonable doubt; and (5) whether the trial court abused its discretion when it sentenced defendants Stuckey and Davis to 60 years' and 40 years' incarceration, respectively. We affirm in part, reverse in part, vacate in part, and remand.

On March 30, 1986, at 1:30 a.m., Mary Merrill was awake waiting for her daughters to return home. Upon hearing dogs barking, she looked through the window on her back door and observed a young girl lying on the ground. Merrill informed the police of the girl's presence in her yard and requested their assistance.

Officer Kevin Barry and his partner drove to Merrill's home in response to the report. The police found the victim in the yard at 10416 South Martin Luther King Drive in Chicago, Illinois. The victim was identified as T.S. T.S. told Officer Barry that she had been raped by Felix Stuckey. T.S. was 14 years of age at the time of this incident, and she had run away from home a few weeks prior to her assault.

T.S. was taken to Roseland Community Hospital and was later transferred to Cook County Hospital around 1 p.m. on March 30, 1986. At that time, T.S. was almost comatose. There was blood in her posterior vagina although she was not menstruating. In addition, 50% of the skin on the right side of her face, and 70% of the skin on the left side of her face, had been avulsed revealing her orbit bone, her facial muscles, and the muscles surrounding her right eye. The victim also had abrasions on her right shoulder, right arm, buttocks, and heels. In addition, the top of her right ear was missing, her eyes were swollen shut, and she was barely able to breathe because her nose and neck were swollen. T.S. was placed on a respirator to aid her breathing. She was also given several skin grafts, and was required to wear a "jobst stocking" to help prevent her skin from scarring. T.S. was treated in Cook County Hospital's burn unit because most of her injuries were similar in nature to third degree burns.

The victim's mother, W.S., visited her daughter at Cook County Hospital. During this visit W.S. asked T.S. who hurt her. W.S. testified that T.S. responded: "James, Felix and Bruno." T.S. was referring to James Stuckey, defendant Felix Stuckey, and defendant Bruce Davis. W.S. told the police about this conversation, and she later testified that her daughter's account of the crime and identification of defendants remained "consistent."

Officer Barry searched the area of the crime for evidence. Officer Barry found a trail of blood which ran down the alley from 104th Street north to 103rd Street, with a pool of blood and a beige jacket lying at the end of the trail. Officer Barry also discovered human hair, beads, two sweaters, a pair of blue jeans, and a pair of red and white striped panties scattered on the pavement between 10332 and 10306 South Calumet Avenue.

Officer Stephen Sharp drove to 109th Street and South Michigan Avenue, where he met two witnesses, Alana White and Yolanda Harrington. Harrington and White were prostitutes who worked in the same geographical area as the victim. White and Harrington were then taken to the police station for questioning. During the course of the interview, the officers discovered that defendant Stuckey was Harrington's "man." In addition, Harrington told Officer Thomas Sheehan that "Bruno" was also known as Bruce Davis, and that defendant Davis was "an associate of her man, Felix, and his brother, James." Harrington gave the police defendant Stuckey's name and address.

On the morning of March 31, 1986, the police went to 147 West 103rd Street and arrested defendant Stuckey. Afterwards, Harrington

told the police that defendant Stuckey had nothing to do with the victim's assault, and that defendant Davis was involved. Harrington gave the police defendant Davis' address. The police subsequently arrested defendant Davis without a warrant on March 31, 1986, at 119th Street and South Edbrooke. Defendants were photographed and fingerprinted at the police station subsequent to their arrests. T.S. later identified defendants from said photographs. James Stuckey was never apprehended.

Assistant State's Attorney Kevin Horan visited T.S. at Cook County Hospital. Assistant State's Attorney Horan showed T.S. photographs of defendant Stuckey, James Stuckey, Philip Conley, and defendant Davis. T.S. identified all of these men as her assailants. Philip Conley and defendants were indicted.

The defense made three pretrial motions. First, defendant Davis made a motion to quash his arrest and suppress evidence in the form of his photograph because the police failed to obtain search and arrest warrants.

During the hearing on the motion, the court heard testimony from defendant Davis, his brother and the arresting officers. Officer Thomas Sheehan testified that upon arriving at 119th and South Edbrooke, he went to the front door while another officer went to the rear of the house. Officer Sheehan told the court that two men answered the front door, and that he identified himself as a police officer. Officer Sheehan testified that after he identified himself, he asked to speak to "Bruno," and that he was told by an unidentified male that "Bruno" was asleep in the basement. Officer Sheehan stated that he subsequently left the front door and walked to the rear of the property. Officer Sheehan testified that he arrested defendant Davis after defendant Davis exited the rear door of the house. Officer Sheehan admitted that he did not know of the existence of a search warrant for the home, or a warrant for Davis' arrest.

Defendant Davis testified that he was awakened and arrested while he was in his bedroom. Similarly, Terrell Davis, defendant Davis' brother, testified that he was sitting on his couch in his home when two plainclothes police officers entered his house. Terrell stated that he did not invite the officers inside.

The trial court found that defendant Davis' arrest was proper because the police had probable cause to arrest him. The trial judge stated:

> "[T]he police certainly had probable cause and a clear duty to look to [defendant Davis,] who had been accused by the victim and the witnesses ***.

***

As to Davis, they clearly had probable cause to arrest him. And as to the warrant question, they had no warrant for Davis, but either they were admitted into the house, which is what I might conclude from the brother's testimony, because he says they suddenly appeared there as far as he knows, or they arrested him in the back yard ***.

Either way police were justified in what they did."

The trial court denied defendant Davis' motion to quash and suppress.

In addition, defendants moved to dismiss the indictments on the basis that they relied upon an agreement with the State, and the State subsequently breached said agreement. Defendant Davis' attorney argued that when the State experienced difficulty preparing its witnesses for trial, the State asked defendants to "defer from demanding trial" and to "go by agreement" in order to allow it sufficient time to obtain samples of bodily fluids from defendants and to conduct laboratory tests upon the specimens. Defendant Davis' counsel maintained that the State agreed to dismiss its case against defendants, *nolle prosequi* in return for defendants' reservation of rights to object to the State's continuances. On February 9, 1987, the State nol-prossed Philip Conley's charges, but continued its prosecution of defendants.

Defendants also moved to bar testimony relating to photographs of them which T.S. viewed at Cook County Hospital. Defendants argued that the State failed to inform them that T.S. had previously identified them in the photographs shown to her while she was hospitalized. Defendants also argued that the State did not accurately inform them of the identity of the attorneys and detectives involved in the photo identification session, and that the State failed to specify the manner in which the process was conducted. Testimony relating to the photographs was later admitted.

At trial, T.S. testified that on the night of March 29, 1986, she and James Stuckey were "looking for a place to prostitute." T.S. stated that she earned $120 from prostitution, and that she kept $60 in her boot and gave $60 to James Stuckey.

T.S. further testified that she was later approached on the street by James Stuckey and defendants on that same night. T.S. maintained that the three men forced her into a car and drove to defendant Stuckey's residence. T.S. then stated that James Stuckey and defendant Stuckey exited the car, leaving her in the car with defendant Davis. T.S. testified that defendant Davis made her engage in sexual intercourse with him without her consent. T.S. later stated on cross-

examination that although she did not agree to have intercourse with defendant Davis, he did not force her to have sex, and that he did not beat her or threaten her before they had intercourse.

T.S. further testified that defendant Stuckey and James Stuckey returned to the car and drove everyone to the park. T.S. stated that upon arriving at the park, defendant Stuckey held a gun in her face and ordered her to exit the car, and she complied. The victim further stated that defendant Stuckey forced her to remove her clothes, that he touched her vagina with his penis, and that defendant Davis again made her engage in sexual intercourse with him without her consent. T.S. stated on cross-examination that defendant Davis did not force her to have sex, and that defendant Davis did not threaten her or beat her prior to intercourse. T.S. also admitted that she did not resist defendant Davis' sexual advances.

T.S. testified that after defendants sexually assaulted her, they removed a rope from the trunk of the car, and tied one end of the rope around her body and hands. She recalled that defendants attached the opposite end of the rope to the back of the car. T.S. testified that defendants then got back into the car, drove the car forward and dragged her along the pavement behind the automobile. T.S. testified that defendants stopped the car a few minutes later whereupon defendant Davis got out of the car and untied her. T.S. stated that he then got back in the car and left her lying in the street. T.S. testified that she went to two houses for help, and that the police found her and sent her to the hospital.

Dr. Demetra Soter also testified on behalf of the State. Dr. Soter examined the victim upon her admission to Cook County Hospital. Dr. Soter testified as to the nature of T.S.' injuries. Dr. Soter opined that T.S.' injuries were consistent with being dragged along a concrete road. Dr. Soter further stated that the act of someone forcing his penis into T.S.' vagina could account for the presence of blood in her vagina.

Phillip Conley testified on behalf of defendant Stuckey, and Dr. Rogelio Rodriguez testified on behalf of both defendants. Dr. Rodriguez, a psychology intern at Cook County Hospital, interviewed T.S. daily for more than six weeks. Dr. Rodriguez stated that T.S. suffered from post-traumatic stress syndrome and suicidal ideation. Dr. Rodriguez testified that on April 18, 1986, T.S. told him that defendants did not harm her. Dr. Rodriguez, however, admitted on cross-examination that he observed that T.S. appeared frightened and confused when she stated that she wasn't sure that she had correctly identified her assailants. Dr. Rodriguez further admitted that on April 14, 1986,

T.S. told him that she was nervous because James Stuckey had not been apprehended, and she feared that he would return and attack her in the hospital during hospital visiting hours.

T.S. admitted on redirect that she lied to Rodriguez when she told him that she did not know the identity of the persons in the pictures because she wanted him to leave her alone. T.S. identified both defendants in court.

Next, Phillip Conley testified that James Stuckey picked him up in a car at 10:30 p.m. on the night of March 30, 1986, and that T.S. was in the car when James picked him up. According to Conley, the three then drove to 103rd and South Michigan Avenue, where T.S. got out of the car and entered another automobile. Conley stated that he and James then went to the Famous Lounge bar on 129th and South Michigan Avenue, and that they remained there until closing time. Conley testified that after the bar closed, he and James went to the White Castle restaurant at 111th and South State Streets where they saw defendant Davis. Conley maintained that he and James then returned to his house. Conley said that he did not see defendant Stuckey at all on that night.

Defendants made several objections during the State's closing argument. First, defendants objected to the State's statement that T.S. had "one foot in the grave," and that "she was obviously within inches from dying." Second, the defense objected to the prosecutor's statement that "[W.S.] *** maintained the same consistent story *** from start to finish."

Next, defendants objected to the State's statement of its theory of defendants' motive for attacking T.S. The prosecutor characterized T.S. as a runaway who James Stuckey made "work on the street." The prosecutor further stated that T.S.:

"[M]akes a big mistake she keeps some of the money and James Stuckey doesn't know initially they wanted her to prostitute some more, this time he's got this friend, Bruno Davis, and his friend Felix Stuckey, they go to Felix Stuckey's car, Bruno Davis decides he wants some sex and ain't going to pay for it, he takes [T.S.] in the back seat and have sex against her will and takes her clothes off, he finds the sixty dollars ($60.00) that's missing ***. When James Stuckey and Felix Stuckey come out of Felix Stuckey's house, he tells them about the sixty dollars, ($60.00), they got to teach her a lesson, not only will this ruin her as far as a prostitute but its going to ruin James Stuckey's other prostitutes, what are they going to do, a

prostitute can keep money from James and get away with it, they got to teach her a lesson.

What did they do, they *** rape her, they are not satisfied, she's not knocking under *** and she tells these people there is no way I am not going to do what you want, and what happens, she gets tied up and she gets dragged down the street ***."

Defendants also found the prosecutor's statement, "I think that everything that I am about to say is supported by the evidence" objectionable.

Similarly, defendants objected to the State's explanation of its theory as to why T.S. recanted her identification of defendants, and why Dr. Rodriguez didn't question her confession. The prosecutor said: "Mr. Rodriguez didn't know that she knew Felix Stuckey for a year, Mr. Rodriguez didn't have the opportunity to say what do you mean you are unsure you know the guy, how could you be unsure ***."

In addition, defendants objected to the prosecutor's statement that "[T.S.] will never be able to walk into a restaurant and order up a meal and not have the entire restaurant look at her, never again, thanks to [defendant Stuckey]."

The defense also objected to the State's comment upon defendant Davis' appearance. The prosecutor said: "[T.S.'] blood is on his feet and it's on his conscience he knows he did it, he knows that he was the one that raped her as he sits here now in that suit and tie, clean shaven with a nice haircut."

Finally, defendants objected to the State's statement during its rebuttal argument that T.S. was "engaged in the kind of activity that would shock most of us."

After closing arguments, the jury found defendant Stuckey guilty of attempted murder, aggravated criminal sexual assault, and aggravated battery. Defendant Davis was convicted of attempted murder and aggravated battery.

First, defendant Davis alleges that he is entitled to a new trial because the trial court erred when it denied his motion to quash his arrest and suppress evidence obtained therefrom, and ruled that the police had probable cause to arrest him without a warrant.

■ The State maintains that the quantum of information known by the police at the time of defendant's arrest was more than sufficient to establish probable cause where the victim's mother testified that the victim identified defendant as one of the offenders immediately after the assault, and where Yolanda Harrington gave the police defendant's name and address. We agree.

"Probable cause to arrest exists where the police have knowledge of facts which would lead a reasonable person to believe a crime has been committed by the person arrested." (*People v. Erby* (1991), 213 Ill. App. 3d 657, 664, 572 N.E.2d 345, 349.) When making a warrantless arrest, "an officer 'may rely upon information received through an informant *** so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.' " (*Illinois v. Gates* (1983), 462 U.S. 213, 242, 76 L. Ed. 2d 527, 550, 103 S. Ct. 2317, 2334, quoting *Jones v. United States* (1960), 362 U.S. 257, 269, 4 L. Ed. 2d 697, 707, 80 S. Ct. 725, 735.) The inquiry which should be made by a trial court in determining if there was probable cause for a warrantless arrest, is whether a reasonable person in the police officer's position would have believed that a crime had been committed. (*People v. Adams* (1989), 131 Ill. 2d 387, 398, 546 N.E.2d 561, 566.) "If the trial court finds that a warrantless arrest was based on probable cause, the arrest is deemed lawful, and evidence obtained during a warrantless search incident to that arrest is admissible to prove defendant's guilt." (*People v. Tisler* (1984), 103 Ill. 2d 226, 237, 469 N.E.2d 147, 153.) The decision of a trial court on a motion to quash arrest and suppress evidence will not be disturbed by a reviewing court unless that finding is manifestly erroneous. *People v. Foskey* (1990), 136 Ill. 2d 66, 76, 554 N.E.2d 192, 197; *People v. Redd* (1990), 135 Ill. 2d 252, 268, 553 N.E.2d 316, 322.

In the present case, we find that there was probable cause for defendant Davis' arrest. First, the circumstances here were sufficient to lead a reasonable person to believe that a crime had been committed by defendant Davis. Officer Sheehan's reliance upon the information he received from Harrington was proper because it was reasonably corroborated by other matters within his knowledge. Sheehan knew that T.S. had been severely injured, and that Harrington and T.S. worked as prostitutes in the same geographical area.

■ Moreover, defendant Davis has failed to demonstrate that the trial court's ruling on his motion to quash his arrest and suppress evidence was manifestly erroneous. It is the function of the trial court to weigh evidence and to determine the witnesses' credibility during a hearing on a motion to quash and suppress. (*People v. Redd* (1990), 135 Ill. 2d 252, 268, 553 N.E.2d 316, 322.) The trial court heard the testimony of Officer Sheehan, defendant Davis, and Terrell Davis during the hearing, and concluded that the police had probable cause to arrest defendant Davis, and that the police were "justified" in arresting him without a warrant. The trial court's ruling was supported by the evidence.

Since the police had probable cause to arrest defendant Davis, the trial court correctly ruled that photographs taken of defendant Davis subsequent to his arrest should not have been suppressed. Accordingly, we affirm the trial court's ruling on the motion to quash and suppress.

Defendants next contend that they were denied effective assistance of counsel and a speedy trial because defense counsel failed to move for a speedy trial discharge pursuant to the sixth amendment to the United States Constitution, article I, section 8, of the Illinois Constitution, and the Speedy Trial Act (Ill. Rev. Stat. 1985, ch. 38, par. 103—5(a)).

Defendants argue in the alternative that the trial court's denial of their motion to dismiss was against the manifest weight of the evidence because the trial court ignored evidence of a pretrial agreement between them and the State, and they are therefore entitled to specific performance of said agreement.

The State maintains that it did not violate defendants' constitutional and statutory rights because defendants' trial commenced before the 120-day term passed, and that there is no evidence of defendants' alleged agreement with the State.

The Speedy Trial Act makes the following relevant provision:

"Speedy trial. (a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant ***." Ill. Rev. Stat. 1985, ch. 38, par. 103—5(a).

■ Defendants were arrested on March 31, 1986. Defendants calculated their time in custody from April 1, 1986, until their time of arraignment on June 18, 1986. We find that defendants miscalculated the amount of time they were in custody. Defendants cannot count the period of time between May 8, 1986, and June 18, 1986, because the trial court granted a continuance by agreement, continuing defendants' cases until June 18, 1986. Where the parties expressly agree to a continuance on the record, it constitutes an affirmative act attributable to the defendant and suspends the 120-day time period. (*People v. Turner* (1989), 128 Ill. 2d 540, 553, 539 N.E.2d 1196, 1201.) In the present case, the delay in the commencement of defendants' trial was occasioned by them. For this reason, 95 days in custody are attributable to defendants. Defendants' total days in custody are reduced by 39 days since the period of time between May 8, 1986, and June 18, 1986, may not be counted. Accordingly, we rule that defendants received a speedy trial.

■ Defendants' argument that they received ineffective assistance of counsel also fails. In order for a defendant to obtain a reversal of his conviction on the basis that he received ineffective assistance of counsel, defendant must prove "(1) that his counsel made errors so serious, and his performance was so deficient, that he was not functioning in a manner commensurate with the standards established by the sixth amendment, and (2) that those deficiencies so prejudiced [him] as to deprive him of a fair trial with a reliable result." (*People v. Jenkins* (1991), 209 Ill. App. 3d 249, 258-59, 568 N.E.2d 122, 128-29; see also *Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.) In the present case, defense counsel did not err by failing to move for a speedy trial discharge because there was no violation of the Speedy Trial Act. Accordingly, we find that defendants' attorneys may not be deemed ineffective for failing to move for a speedy trial discharge.

■ Furthermore, we rule that defendants' alternate contention that the trial court erred when it denied their motion to dismiss because their convictions were obtained in violation of an alleged agreement between them and the State lacks merit. We will not grant defendants' request for specific performance of the alleged agreement because defendants cannot substantiate the existence of an agreement. There is no evidence in the record that the State promised defendants that it would dismiss the charges against them. Moreover, the State has absolute discretion both to commence prosecution and to nol-pros a charge. (*People v. Matuck* (1988), 174 Ill. App. 3d 592, 593-94, 528 N.E.2d 1102, 1103-04.) In the present case, the State exercised its discretion when it nol-prossed Phillip Conley's charges and indicted defendants.

Accordingly, we find that the trial court's ruling on defendants' motion to dismiss was not contrary to the manifest weight of the evidence.

Next, defendants allege that the cumulative impact of improper prosecutorial comments made during closing arguments violated their rights to a fair trial and due process of law guaranteed by the sixth and fourteenth amendments to the United States Constitution, article I, section 8, of the Illinois Constitution, and the Speedy Trial Act (Ill. Rev. Stat. 1985, ch. 38, par. 103—5(a)).

Defendant Davis argues that his rights to due process and a fair trial were violated on the basis that the prosecutorial misconduct in defendant Stuckey's closing argument affected the judge's ability to render a fair decision in his case because there was a possibility of

prejudice and confusion inherent in the simultaneous trial of two defendants before a judge and a jury.

The State maintains that defendants received a fair trial because its closing argument was based upon the evidence presented at trial and reasonable inferences drawn therefrom. In instances where individual errors committed by a trial court would not merit reversal alone, the cumulative effect of said errors may deprive a defendant of a fair trial. (*People v. Johnson* (1991), 215 Ill. App. 3d 713, 734-35, 575 N.E.2d 1247, 1260-61.) In such cases, due process and fundamental fairness require that the cause be remanded for a new trial. *Johnson*, 215 Ill. App. 3d at 735, 575 N.E.2d at 1261.

■ We will address each of the nine alleged errors before addressing their cumulative impact. First, defendants argue that they were prejudiced by the State's comment that T.S. had "one foot in the grave, [and] was obviously within inches from dying." Defendants maintain that the trial court should have sustained their objection to this comment because there was no testimony at trial that T.S. nearly died as a result of her injuries. We find that the State's comment concerning T.S.' physical condition was supported by the evidence adduced at trial. T.S. was almost comatose when she arrived at Cook County Hospital, she was placed on a respirator because she had trouble breathing, and she suffered from severe abrasions which were similar in character to third degree burns. "A prosecutor's comments cannot be labelled improper if those comments are based upon facts in the record or reasonable inferences drawn from those facts." (*People v. Moya* (1988), 175 Ill. App. 3d 22, 24, 529 N.E.2d 657, 659.) "A prosecutor has wide latitude during closing argument, and the trial court's determination regarding the propriety of [an] argument will not be [overruled] on appeal absent a clear abuse of discretion." (*People v. Williams* (1984), 127 Ill. App. 3d 231, 234, 468 N.E.2d 807, 810.) Accordingly, we find that the prosecutor's statement was proper and that the trial court did not abuse its discretion when it overruled defendant Stuckey's objection to this comment.

Next, defendants argue that the prosecutor, improperly bolstered the credibility of W.S. when he stated that W.S. "maintained the same consistent story *** from start to finish." Defendants argue that this statement was improper because there was no testimony presented at trial which would support this argument. We disagree. This argument was proper because it was based upon testimony presented at trial. W.S. testified that she asked her daughter who hurt her, and that T.S. said: "James, Felix and Bruno." The prosecutor then asked W.S.: "Did your daughter tell you *** a man by the name of Conley was

driving the car[?]" W.S. responded: "At anytime when I talked to my daughter, she was consistent." Accordingly, we find that the trial court did not abuse its discretion when it overruled defendant Stuckey's objection to this statement.

Third, defendants contend that the trial court erred when it overruled defendant Stuckey's objection to the prosecutor's comment concerning defendants' motive for harming T.S. Motive is a proper subject to argue to the jury, where there is some evidence of a defendant's motive to commit a crime. (*People v. Lasley* (1987), 158 Ill. App. 3d 614, 629, 511 N.E.2d 661, 672.) T.S. testified that on the night of the assault she earned $120 from prostitution, she kept $60 for herself, and she gave the remaining $60 to James Stuckey. Therefore, the State's argument that defendants' motive for attempted murder that T.S. kept half of the money she earned from prostitution was proper, and the trial court did not abuse its discretion when it overruled defendant Stuckey's objection to this statement.

Next, defendants contend that the prosecutor's comment, "I think everything I am about to say is supported by the evidence," was improper because the prosecutor expressed his personal opinion. We disagree. A prosecutor may comment on the strength of his case based upon the evidence. (*People v. Smith* (1991), 209 Ill. App. 3d 1043, 1052, 568 N.E.2d 482, 488.) The record reveals that the prosecutor outlined the evidence presented against defendant Stuckey at trial, and that he then stated that the evidence proved defendant Stuckey's guilt. Therefore, the prosecutor's statement was proper, and the trial court did not abuse its discretion when it overruled defendant Stuckey's objection.

Defendants next argue that the prosecutor's comment describing T.S. and W.S. as being "in tears" was improper. We agree. This remark was improper because there is no evidence in the record that either woman was "in tears." However, improper comments made during closing arguments will not constitute reversible error unless they result in substantial prejudice to the accused. (*People v. Jenkins* (1991), 209 Ill. App. 3d 249, 261, 568 N.E.2d 122, 130; *People v. Williams* (1984), 127 Ill. App. 3d 231, 234, 468 N.E.2d 807, 810.) Improper comments made during closing arguments which are not material do not deprive a defendant of a fair trial. (*People v. Cobb* (1989), 186 Ill. App. 3d 898, 914, 542 N.E.2d 1171, 1182-83.) In the present case, we find that the State's reference to T.S. and W.S. being "in tears" was not material, and as such, it did not prejudice defendants or deny them a fair trial.

In addition, defendants argue that the trial court erred when it overruled defendant Stuckey's objection to the State's comments concerning T.S.' statement to Dr. Rodriguez that she was uncertain about her identification of defendants, and his subsequent failure to ask her how she could be unsure since she knew defendant Stuckey. Defendants maintain that there is no evidence that T.S. was uncertain as to her identification of defendants due to anxiety concerning the missing assailant, James Stuckey, and that there was no testimony at trial which addressed whether Dr. Rodriguez knew that T.S. had known defendant Stuckey for one year. We find that a portion of this statement was proper because it was supported by the evidence. Dr. Rodriguez admitted on cross-examination that he observed that T.S. appeared frightened and confused when she stated that she wasn't sure she had identified the correct assailants. Dr. Rodriguez further admitted that on April 14, 1986, T.S. told him that she was nervous because James Stuckey had not been apprehended, and that she feared he would return and assault her during hospital visiting hours. There is no evidence, however, that Dr. Rodriguez was aware that T.S. had known defendant Stuckey for one year; therefore, this portion of the statement was improper. This assertion, however, was not material, and therefore it did not deprive defendants of a fair trial.

Next, defendants contend that the prosecutor's comment that T.S. "will never be able to walk into a restaurant and order a meal and not have the entire restaurant look at her" was prejudicial. A prosecutor has wide latitude to comment upon the evidence presented to the court and the evils of the crime committed. (*People v. Moya* (1988), 175 Ill. App. 3d 22, 24, 529 N.E.2d 657, 659.) The record shows that T.S. was disfigured because she sustained injuries similar in nature to third degree burns. Therefore, the State's comment was proper, and the trial court did not abuse its discretion when it overruled defendant Stuckey's objection.

In addition, defendants argue that the prosecutor's comment upon defendant Stuckey's guilt and his neat appearance was improper. We find that this remark was improper. However, an error is harmless if it is not prejudicial to the rights of the party assigning it, and where the defendant would not have been entitled to prevail even if the error had not been committed. (*People v. Jenkins* (1991), 209 Ill. App. 3d 249, 257, 568 N.E.2d 122, 128.) We find that the error was rendered harmless by the overwhelming evidence against defendants.

Finally, defendants argue that the prosecutor's remark that T.S. was "engaged in the kind of activity that would shock most of us" created a trial of the defense attorney rather than a determination of

the defendants' guilt or innocence. The State maintains, however, that the remarks were made in response to the defense attorney's argument referring to T.S. as a prostitute. We agree. The State properly argued that even though T.S. had engaged in prostitution on the night she was injured, T.S.' engaging in prostitution did not give defendants license to assault her.

After a careful review of the record, we conclude that the cumulative effect of the errors at trial did not deprive defendants of a fair trial or due process of law.

Defendants next allege that they were not proven guilty beyond a reasonable doubt. The State maintains that defendants were proven guilty beyond a reasonable doubt because overwhelming evidence of defendants' guilt was presented at trial.

The relevant inquiry upon review of the sufficiency of the evidence in a criminal case is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *People v. Trimble* (1991), 220 Ill. App. 3d 338, 350, 580 N.E.2d 1209, 1216; *People v. Schorle* (1991), 206 Ill. App. 3d 748, 759, 565 N.E.2d 84, 91.) A guilty verdict will not be reversed on appeal unless it is "inconclusive, improbable, unconvincing, or contrary to human experience." *Trimble*, 220 Ill. App. 3d at 350, 580 N.E.2d at 1216; *Schorle*, 206 Ill. App. 3d at 758, 565 N.E.2d at 90.

Defendants maintain that there is a reasonable doubt as to their guilt because T.S.' testimony was not credible because (1) she told police officers that defendant Davis and Phillip Conley tied her to the back of the car rather than defendant Stuckey; and (2) she told Dr. Rodriguez that her identification of her assailants was erroneous.

After considering the evidence in the light most favorable to the prosecution, we find that the trial court's ruling is neither improbable, unconvincing, inconclusive, nor contrary to human experience. The trial court could have found defendants guilty of the crimes for which they were charged. Officer Barry testified that T.S. identified defendant Stuckey as the person who sexually assaulted her, T.S. later testified that she was assaulted, and Dr. Soter testified that she found blood in T.S.' vagina during an examination. In addition, T.S. sustained great bodily harm. T.S. testified that she was dragged across the pavement by a rope attached to the back of a car. Dr. Soter testified that T.S.' injuries were consistent with being dragged along the pavement. T.S. identified defendant Stuckey, defendant Davis and

Phillip Conley as her assailants upon viewing their photographs, and she identified defendants in court. Dr. Rodriguez testified that T.S. suffered from post traumatic stress syndrome, and that she feared one of the defendants would assault her again. Dr. Rodriguez concluded that T.S. was apprehensive about identifying defendants for these reasons. Accordingly, we find that defendants were proven guilty beyond a reasonable doubt.

Finally, defendants allege that the trial court abused its discretion when it sentenced defendants Stuckey and Davis to 60 years' and 40 years' incarceration, respectively. Defendant Stuckey maintains that his sentence should be vacated and his cause remanded because his criminal history was not included in his presentence investigation report as required by section 5—3—2 of the Unified Code of Corrections. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—3—2.) If we find for the State on this issue, defendant Stuckey argues in the alternative that his sentence is excessive and should be vacated and his cause remanded for resentencing.

The State maintains that defendant Stuckey was not prejudiced by the missing adult criminal history, and that he benefitted from its omission. The State also argues that defendant Stuckey waived his right to appellate review of the issue of a defect in the presentence investigation report pursuant to *People v. Dye* (1982), 107 Ill. App. 3d 125, 126, 438 N.E.2d 211, 212, because he failed to bring the alleged omission of his adult criminal history to the attention of the trial court, and he made no objection to the alleged defect in the report at his sentencing hearing.

Defendant Davis argues that his sentence is excessive and therefore should be vacated and reduced. In the alternative, if we are not convinced by this argument, defendant Davis maintains that his aggravated battery conviction must be vacated because his convictions for aggravated battery and attempted murder arise from the same incident.

The State, in reliance upon section 5—3—2(b)(2) of the Unified Code of Corrections, maintains that defendant Davis was properly sentenced to a 40-year term of incarceration because the trial court may impose an extended-term sentence upon a defendant where the defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. Ill. Rev. Stat. 1985, ch. 38, par. 1005—3—2(b)(2).

In defendant Stuckey's case, the presentence investigation report was filed on July 24, 1987. The report lacked a description of defend-

ant Stuckey's adult criminal history. The report indicated that his adult criminal history had not been submitted at the time the report was written. On the date of the sentencing hearing, the report indicated that defendant Stuckey's adult criminal history had been ordered, but had not been received. Defendant Stuckey made no objection to the incomplete presentence investigation report during the sentencing hearing.

■ We find that defendant Stuckey was prejudiced by the omission of his adult criminal history from his presentence investigation report. The doctrine of waiver is inapplicable to the present case because the trial court committed plain error when it sentenced defendant Stuckey without a complete presentence investigation report.

Illinois Supreme Court Rule 615(a) provides that plain error which affects a party's substantial rights may be noticed on appeal even though the error was not brought to the attention of the trial court. 134 Ill. 2d R. 615(a); see also *People v. Sherrod* (1991), 220 Ill. App. 3d 429, 433, 581 N.E.2d 53, 56.

The doctrine of plain error "encompasses those errors which are obvious, which affect the substantial rights of the accused, and which, if uncorrected, would be an affront to the integrity and reputation of judicial proceedings." Black's Law Dictionary 1035 (5th ed. 1979).

In *People v. Young* (1989), 128 Ill. 2d 1, 47, 538 N.E.2d 461, 471, our supreme court ruled that "[t]he criterion for the application of the plain error rule in criminal cases is whether the evidence is closely balanced or the error is of such magnitude that the commission thereof denies the accused a fair and impartial trial or sentencing hearing."

In *People v. Bass* (1991), 220 Ill. App. 3d 230, 239, 580 N.E.2d 1274, 1280, quoting *Young*, 128 Ill. 2d at 46, 538 N.E.2d at 471, we noted that "[t]his rule serves the dual purposes of 'correcting serious injustices' and preserving 'the integrity and reputation of the judicial process.' "

The prior criminal record of a defendant must be considered when the court imposes a sentence. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—3—1; see also *People v. Hart* (1971), 132 Ill. App. 2d 558, 563, 270 N.E.2d 102, 105.) Section 5—3—1 of the Unified Code of Corrections provides that "[a] defendant shall not be sentenced for a felony before a written presentence report of investigation is presented to and considered by the court." (Ill. Rev. Stat. 1985, ch. 38, par. 1005—3—1; see also *People v. Youngbey* (1980), 82 Ill. 2d 556, 564, 413 N.E.2d 416, 420-21.) In addition, the Unified Code of Corrections makes the

following provision governing the contents of presentence investigation reports:

"Presentence Report. (a) The presentence report shall set forth:

(1) the defendant's history of delinquency or criminality ***." Ill. Rev. Stat. 1985, ch. 38, par. 1005—3—2.

At the time defendant Stuckey was sentenced, the Unified Code of Corrections explicitly required that the trial court consider his history of delinquency or criminality. This was not done in the present case since the presentence investigation report did not contain information concerning defendant Stuckey's adult criminal history. It is clear that the trial court violated section 5—3—2 of the Unified Code of Corrections. The omission of defendant Stuckey's criminal history from the presentence investigation report was an obvious error which encroached upon the accused's right to due process. This error was of such magnitude that it denied defendant Stuckey a fair and impartial sentencing hearing. Accordingly, we find that the trial court abused its discretion when it sentenced defendant Stuckey to 60 years' imprisonment. We therefore vacate defendant Stuckey's sentence and remand his case for a new sentencing hearing.

At defendant Stuckey's new sentencing hearing, the trial court must obtain and consider his adult criminal history, in conjunction with the existing information in his presentence investigation report, and sentence defendant Stuckey for committing the crimes of attempted murder and aggravated criminal sexual assault.

■ Next, we find that the trial court abused its discretion when it sentenced defendant Davis to 40 years' imprisonment. Defendant Davis' convictions for attempted murder and aggravated battery were both based upon tying T.S. to the rear of a car and dragging her across the pavement. We rule that defendant Davis' conviction for aggravated battery must be reversed, and the portion of his sentence based upon his conviction for aggravated battery vacated, because aggravated battery was a lesser included offense of attempted murder. See *People v. Washington* (1984), 127 Ill. App. 3d 365, 389, 468 N.E.2d 1285, 1302; *People v. Bingham* (1979), 75 Ill. App. 3d 418, 428, 394 N.E.2d 430, 437.

For the reasons stated herein, defendant Stuckey's convictions for attempted murder and aggravated criminal sexual assault are affirmed, and his case remanded for a new sentencing hearing. Defendant Davis' conviction and sentence for attempted murder is affirmed, but his conviction for aggravated battery is reversed, and the portion

of his sentence based upon the offense of aggravated battery is vacated.

For the foregoing reasons, we affirm in part, reverse in part, vacate in part, and remand.

Affirmed in part; reversed in part; vacated in part; and remanded.

CERDA, J., concurs.

PRESIDING JUSTICE GREIMAN, specially concurring:

This special concurrence is written not to disagree with the majority's holdings on any issue but to address the consequences of a defective presentence investigation report.

The majority opinion correctly holds that the facts of this case necessitate remandment for resentencing under the plain error doctrine because the presentence report did not contain defendant's criminal history as required by statute. To determine an appropriate sentence, a sentencing court should clearly be apprised of defendant's status as either a first-time offender or recidivist.

However, the absence of a presentence report or the failure of such report to include all factors enumerated in the statute (Ill. Rev. Stat. 1985, ch. 38, par. 1005—3—2) does not automatically require remandment for resentencing.

The parties have a duty to bring to the attention of the sentencing authority any alleged deficiency or inaccuracy in the presentence report. (*People v. Meeks* (1980), 81 Ill. 2d 524, 533, 411 N.E.2d 9.) Accordingly, the issue of a defective presentence report can be deemed waived where a party fails to object to the trial court about any alleged deficiency or inaccuracy in the report. *Meeks*, 81 Ill. 2d at 533 (where the presentence report at issue did not fully comply with the statutory requirements, resentencing was not required because defense counsel failed to preserve the error for review); see also *People v. Madej* (1985), 106 Ill. 2d 201, 478 N.E.2d 392; *People v. Godinez* (1982), 91 Ill. 2d 47, 434 N.E.2d 1121 (and cases cited therein); *People v. Laramore* (1987), 163 Ill. App. 3d 783, 516 N.E.2d 401 (the defendant was found to have waived any errors in the presentence report by failing to object at the hearing); *People v. Dye* (1982), 107 Ill. App. 3d 125, 438 N.E.2d 211 (the defendant, by failing to object, waived his contention that the report was untimely or insufficient).

In addition, where no formal written presentence report was available to the sentencing court, remandment for resentencing was not ordered because the defendant was not prejudiced by the absence

of the report. *People v. Gacy* (1984), 103 Ill. 2d 1, 107-08, 468 N.E.2d 1171 (in rejecting the defendant's argument that resentencing was required, the supreme court observed that it saw "no basis upon which to find that a formal written presentence investigation report would alter the judge's determination on the facts of this case"); *People v. Calhoun* (1986), 144 Ill. App. 3d 829, 837, 494 N.E.2d 498 (this court held that the trial court's error in failing to order a presentence report was harmless because the "omission of statutorily required procedure in a sentencing hearing, when the omission amounts to a technical or formal error which does not prejudice defendant, does not require remand for resentencing"); *People v. Casper* (1981), 97 Ill. App. 3d 787, 423 N.E.2d 510 (the deficiencies in the presentence report did not warrant remandment in light of the trial court's well considered conclusion that a sentence of imprisonment was necessary).