THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PATRICK LAWRENCE, Defendant-Appellant.

First District (3rd Division) No. 1—91—3561

Opinion filed September 22, 1993.

Rita A. Fry, Public Defender, of Chicago (Z. Peter Tokatlian, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Rebecca Davidson, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Following a jury trial, defendant, Patrick Lawrence, was convicted of criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—13(a)(4)) and aggravated criminal sexual abuse (Ill. Rev. Stat. 1989,

ch. 38, par. 12—16(d)). Defendant was sentenced to concurrent terms of 10 years' imprisonment for criminal sexual assault and 5 years' imprisonment for aggravated criminal sexual abuse. We affirm in part, reverse in part and vacate in part.

The issues before this court for review are (1) whether the trial court erred when it permitted the prosecution to introduce a certain statement made by defendant; (2) whether defendant was proven guilty of criminal sexual assault and aggravated criminal sexual abuse beyond a reasonable doubt; (3) whether defendant's conviction for aggravated criminal sexual abuse must be reversed and his sentence vacated on the basis that the aforementioned crime is a lesser-included offense of criminal sexual assault; (4) whether certain statements made during the prosecutor's closing argument deprived defendant of a fair trial; (5) whether defendant is entitled to a new sentencing hearing on the basis that his conviction for aggravated criminal sexual abuse had a negative influence and an improper prejudicial effect upon the trial court with respect to its formulation of defendant's sentence for criminal sexual assault; and (6) whether defendant's 10-year sentence should be reduced on the basis that it was excessive.

The victim, E.B., Tony Avila and C.B. all testified on behalf of the State. E.B. testified that on September 23, 1989, he was 15 years of age. E.B. further testified that he and his friend, Tony Avila, were standing at the intersection of 15th and Avers Streets when defendant, then a 25-year-old Chicago police officer, pulled up next to them in a squad car. E.B. testified that defendant determined his age and then threatened to charge him with a curfew violation, but that defendant released him to Avila's custody instead. The record shows that Avila was 18 years of age on that date. E.B. further testified that after he was released into Avila's custody, he witnessed Avila and defendant engage in a conversation which he could not hear. Avila later told the court that during the conversation in question, defendant requested that both boys meet him later around midnight.

E.B. testified that approximately 45 minutes after he was was released into Avila's custody, he and Avila met defendant, who was sitting in his own car on Avers Street. E.B. testified that he and Avila got into defendant's car. E.B. recalled that defendant was wearing a white T-shirt and the pants from his police uniform. E.B. also observed that defendant was wearing a beeper. E.B. testified that defendant received several pages on his beeper which he answered. E.B. stated that after he and Avila entered defendant's car, defendant ran errands.

E.B. testified that defendant drove him and Avila to the parking lot of the Michelle Clark School near Laramie and the Congress expressway. E.B. told the court that defendant started rubbing his leg just prior to their arrival at the school parking lot. E.B. testified that although he was able to push defendant's hand off of his leg, he was unsuccessful in his attempt to prevent defendant from touching him again. E.B. recalled that upon arriving at the school, defendant asked him: "[H]ave you ever had your penis sucked?" E.B. stated that he replied in the negative. E.B. testified that defendant then performed fellatio on him while Avila remained in the back seat of the car. When defendant finished performing oral sex on E.B., Avila took the front seat and E.B. moved to the back seat. E.B. testified that defendant then performed fellatio on Avila.

After defendant performed oral sex upon Avila, he drove to a gas station where E.B. exited the car and purchased a can of soda pop. Defendant then drove E.B. to his aunt's house. E.B. testified that before he exited the car and went inside of his aunt's house, defendant gave him five bags of cocaine and $30 in cash and instructed him to share both the money and the drugs with Avila.

E.B. testified that upon entering his aunt's house, he told her that he had been harassed by the police; however, he did not disclose any details of his sexual encounter with defendant. E.B. claimed that he subsequently told his mother, who was deceased at the time of the trial, all of the details concerning his interaction with defendant.

Avila corroborated E.B.'s testimony concerning what happened in defendant's car. In addition to his testimony about the crime perpetrated upon E.B., Avila also testified concerning events which occurred five days later. Avila told the court that on September 28, 1989, he paged defendant on his beeper and asked defendant to meet him. Defendant did so and then defendant, Avila and Avila's friend Michael all went out to buy beer. Avila testified that he and Michael were too young to buy alcohol so defendant purchased the beer which they all consumed. Avila further testified that defendant performed acts of fellatio upon him and Michael while the three men were in defendant's car. Avila told the court that he grabbed defendant's gun and stole defendant's car after the sexual interlude because he believed that defendant owed him money in exchange for his participation in the sexual activity.

Defendant reported the loss of his service revolver and automobile as an armed robbery and gave the police department a vague description of the offenders, providing only their first names. Defendant did not tell the police that he knew how to get in touch with the suspects.

In October of 1989, Avila was arrested for the armed robbery of defendant. Avila testified that upon his arrest, he told the police that defendant was gay and that he had taken defendant's car because defendant owed him money in exchange for his participation in sexual activity. Avila told the court that he also informed the police about defendant's sexual encounter with 15-year-old E.B. Avila spent the night in jail but was not charged with the armed robbery of defendant.

Officer Peter Koconis, an employee of the internal affairs division of the Chicago police department, later questioned the victim about the events which occurred on the night of September 23, 1989. E.B. told Officer Koconis what defendant had done to him. On October 20, 1989, defendant was arrested and relieved of his duties as a police officer. On that same day, Officer Koconis had a conversation with defendant, in which defendant admitted that he had had sexual contact with Avila prior to the theft of his car and that he therefore did not want to press charges against Avila.

Later, during defendant's trial, the State offered the testimony of C.B. to show defendant's *modus operandi*. C.B. testified that he also had a sexual encounter with defendant and that he was 16 years of age at the time. C.B. told the court that on June 10, 1989, he was stopped by defendant for traffic and curfew violations and placed in defendant's squad car. C.B. stated that he was then taken to the tenth district police station where defendant told him that he would not go to jail if he allowed defendant to perform fellatio on him. C.B. testified that defendant then took him into the public bathroom where defendant performed fellatio upon him. C.B. further testified that he then left the police station without being cited for curfew or traffic violations.

Defendant's partner, Officer Regina Smith, testified that she saw her partner and C.B. walking down the hall from the men's bathroom. Youth officer Kathleen Argentino testified that she checked the police department records and found that no citation had been submitted by defendant for an offense perpetrated by C.B. on June 10, 1989.

The State then rested its case and defendant presented no defense. The jury found defendant guilty of criminal sexual assault and aggravated criminal sexual abuse. Defendant was sentenced to concurrent terms of 10 years and 5 years for criminal sexual assault and aggravated criminal sexual abuse, respectively.

First, defendant contends that both of his convictions should be reversed and the cause remanded for a new trial because the trial court erred when it allowed the prosecution to introduce testimony

that he admitted to having had sexual contact with Avila. At the time of his arrest, defendant admitted to Officer Koconis of the internal affairs division of the Chicago police department that he had engaged in sexual activity with Avila on the same night that he engaged in illegal sexual activity with E.B. Defendant contends that since he and Avila were consenting adults, he did not perpetrate a crime upon Avila and that his statement regarding sexual activity with Avila therefore did not constitute a declaration against interest and should not have been admitted into evidence.

The record shows that immediately prior to trial, defense counsel objected to the reference to the sexual encounter with Avila, stating that it was not listed as proof of other crimes and could not be admitted into evidence as an exception to the general rule prohibiting the admission of evidence of other crimes. The State conceded that the act in question was not a crime since Avila was an adult for purposes of the statute, but it maintained that the evidence in question was admissible because defense counsel articulated that his defense included challenging the credibility of Avila by questioning the veracity of defendant's account of the circumstances surrounding the theft of defendant's gun and car.

The trial court then ruled that the evidence in question was relevant since the credibility of the witness would "clearly be in issue." The trial court further opined that "it is all going to be relevant" since Avila was not prosecuted for armed robbery. Later, defense counsel in his opening statement referred to Avila's account of his sexual interactions with defendant as "this nonsense story" and argued that "Avila, as a result of his little story, walked out of that police station never charged with armed robbery."

During the trial, the following colloquy occurred:

"DEFENSE COUNSEL: Now, when you got arrested on that a couple of days later you knew you were in big trouble, right?

AVILA: Yes.

DEFENSE COUNSEL: Police officers tell you how serious armed robbery was?

AVILA: Yes.

DEFENSE COUNSEL: No probation, right? Mandatory minimum 6 years in prison right?

AVILA: Yes.

DEFENSE COUNSEL: And that's when you told the officers about Patrick Lawrence, right?

AVILA: Yes."

Defense counsel again returned to this line of questioning later during cross-examination:

"DEFENSE COUNSEL: Now after you got arrested and you told this story, the police let you go on this robbery, right?

AVILA: They locked me up for a night.

DEFENSE COUNSEL: Yes. But they never charged you with robbing Officer Lawrence that night, did they?

AVILA: No.

DEFENSE COUNSEL: Or any night did they?

AVILA: No."

Defense counsel's cross-examination of Avila was specifically designed to lead the jury to believe that he fabricated the information about sexual activity between him and defendant in order to evade an armed robbery charge.

■ Both the State and the defense concede that the sexual conduct between defendant and Avila was not criminal. The issue of whether the evidence was admissible is therefore dependent upon relevancy. We find that the admission of information conveyed by defendant in his statement to Officer Koconis regarding sexual contact between himself and Avila was admissible because the evidence in question was relevant to the contested issue of Avila's credibility. The question of Avila's credibility is significant since he testified that he witnessed defendant perform fellatio upon E.B. That act is the basis for the State's prosecution of defendant.

Defendant cites *People v. Barbour* (1982), 106 Ill. App. 3d 993, 436 N.E.2d 667, for the proposition that evidence should not be admitted when the evidence in question is evidence of misconduct similar to the offense for which defendant is being tried. *Barbour*, however, is distinguishable from the present case because the issue in *Barbour* was whether the evidence of other crimes was offered to show *modus operandi* and a common scheme. The *Barbour* court held that the evidence was insufficiently similar to so demonstrate. (*Barbour*, 106 Ill. App. 3d at 999, 436 N.E.2d at 672.) In addition, the *Barbour* court found that the evidence in question was irrelevant with respect to the contested issue. (*Barbour*, 106 Ill. App. 3d at 1000, 436 N.E.2d at 673.) In the present case, evidence that defendant engaged in an act of fellatio with Avila was relevant for a purpose other than to show defendant's propensity to commit crimes. We therefore reject defendant's argument.

Next, defendant contends that his convictions should be reversed because he was not proven guilty of either offense beyond a reasonable doubt. The relevant inquiry upon appellate review of the suffi-

ciency of the evidence of a defendant's guilt is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that defendant committed the essential elements of the crime for which he was convicted beyond a reasonable doubt. (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *People v. Stuckey* (1992), 231 Ill. App. 3d 550, 566, 596 N.E.2d 646, 657.) A guilty verdict will not be reversed on appeal unless it is inconclusive, improbable, unconvincing or contrary to human experience. *Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789; *Stuckey*, 231 Ill. App. 3d at 566, 596 N.E.2d at 657.

Upon considering the evidence in the light most favorable to the prosecution, we find that the trial court's ruling is neither inconclusive, improbable, unconvincing nor contrary to human experience. A rational jury could have found defendant guilty of criminal sexual assault and aggravated criminal sexual abuse beyond a reasonable doubt.

"Criminal sexual assault" is "an act of sexual penetration with a victim who was at least 13 years of age but under 18 years of age when the act was committed and the accused was 17 years of age or over and held a position of trust, authority or supervision in relation to the victim." (Ill. Rev. Stat. 1989, ch. 38, par. 12—13(a)(4).) "Sexual penetration" constitutes "any contact, however slight, between the sex organ of one person and the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person *** into the sex organ or anus of another person, including but not limited to *** fellatio." Ill. Rev. Stat. 1989, ch. 38, par. 12—12(f).

"[An] accused commits aggravated criminal sexual abuse if he *** commits an act of sexual penetration or sexual conduct with a victim who was at least 13 years of age but under 17 years of age and the accused was at least 5 years older than the victim." (Ill. Rev. Stat. 1989, ch. 38, par. 12—16(d).) "Sexual conduct" is defined in the following manner: "any intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus or breast of the victim or the accused, or any part of the body of a child under 13 years of age, for the purpose of sexual gratification or arousal of the victim or the accused." Ill. Rev. Stat. 1989, ch. 38, par. 12—12(e).

Defendant was a 25-year-old police officer on the date that the offense in question occurred. E.B., who was 15 years of age at the time of the incident, told the court that defendant intentionally and know-

ingly performed an act of fellatio upon him. E.B. testified that he did not want to engage in sexual activity with defendant, but that he did so because he felt he had no other choice.

■ E.B.'s testimony was corroborated by Avila. Avila told the court that E.B. was released into his custody *in lieu* of being charged with a curfew violation. Avila further testified that defendant told them that they should meet again around midnight. Avila told the court that he and E.B. got into defendant's car approximately 45 minutes later, after which he observed defendant perform fellatio upon E.B. Accordingly, evidence was sufficient to support defendant's convictions for criminal sexual assault and aggravated criminal sexual abuse.

Next, defendant contends that his conviction for aggravated criminal sexual abuse should be reversed and his sentence for said offense vacated, because the crime is a lesser-included offense of criminal sexual assault since both convictions were based upon the same physical act. The State concedes that aggravated criminal sexual abuse is a lesser-included offense of criminal sexual assault and that defendant's conviction for aggravated criminal sexual abuse should be reversed and his sentence vacated.

We hold that defendant was found guilty of criminal sexual assault and aggravated criminal sexual abuse pursuant to the above-cited statutes based on his performance of a single act of fellatio upon a minor, E.B., while he was a 25-year-old police officer in a position of authority over E.B.

The Criminal Code defines an "included offense" as an offense which is "established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." (Ill. Rev. Stat. 1989, ch. 38, par. 2—9.) Similarly, Illinois courts have defined a "lesser-included offense" as one "composed of some, but not all, of the elements of the greater offense, and which does not have any element not included in the greater offense." *People v. Jones* (1992), 149 Ill. 2d 288, 293, 595 N.E.2d 1071, 1073.

■ We find that aggravated criminal sexual abuse is an "included offense" of criminal sexual assault because defendant's guilt of aggravated criminal sexual abuse could be established by proof beyond a reasonable doubt of the same facts as those which the State presented to prove that defendant committed criminal sexual assault. Aggravated criminal sexual abuse is a "lesser-included offense" of criminal sexual assault pursuant to the above-cited case law because it is composed of some but not all of the elements of the greater offense of

criminal sexual assault. First, in order for defendant to be found guilty of the crime of the greater offense of criminal sexual assault, the State must prove that defendant held a position of authority in relation to the victim and that defendant committed an act of sexual penetration upon the victim. Furthermore, the element of a position of authority over the victim is not an element of aggravated criminal sexual abuse. In addition, aggravated criminal sexual abuse does not have an element which is not included in the greater offense. Accordingly, we reverse defendant's conviction for aggravated criminal sexual abuse and vacate his sentence for said crime.

Next, defendant contends that he was deprived of a fair trial on the basis that the prosecutor made three inflammatory prejudicial remarks during the State's closing argument.

First, defendant complains that the State's characterization of him as a "child molester" constitutes reversible error. Initially, the State maintains that defendant has waived his right to appellate review of this allegation because he failed to object to the remark when it was made at trial. In the alternative, the State maintains that the prosecutor's closing argument was a fair comment on the evidence presented.

The waiver rule provides that a party waives his right to appellate review of an alleged error made during trial unless he preserves said right by objecting to the alleged impropriety in a timely manner and by mentioning the specific objection in a post-trial motion. *People v. Enoch* (1988), 122 Ill. 2d 176, 186-88, 522 N.E.2d 1124, 1129-32.

Under Illinois Supreme Court Rule 366(a)(5) (134 Ill. 2d R. 366(a)(5)), however, this court may, in the exercise of its duty to insure that a cause has a just result, ignore the doctrine of waiver and decide a case on grounds not properly raised or not raised at all by the parties. *Palomar v. Metropolitan Sanitary District of Greater Chicago* (1992), 225 Ill. App. 3d 182, 188, 587 N.E.2d 1067, 1071; *City of Wyoming v. Illinois Liquor Control Comm'n* (1977), 48 Ill. App. 3d 404, 407-08, 362 N.E.2d 1080, 1083; *Occidental Chemical Co. v. Agri Profit Systems, Inc.* (1975), 37 Ill. App. 3d 599, 603, 346 N.E.2d 482, 485.

In the present case, defendant has failed to preserve the issue of the propriety of his being called a "child molester" for appellate review. We will, however, review defendant's allegation of prosecutorial misconduct pursuant to our authority granted under Rule 366(a)(5).

In Illinois, a prosecutor has wide latitude during closing argument and may make comments based upon facts in the record or reasonable inferences drawn therefrom. (*People v. Stuckey* (1992), 231 Ill. App.

3d 550, 563, 596 N.E.2d 646, 655.) Such comments may not be labelled improper. (*People v. Campbell* (1992), 264 Ill. App. 3d 712, 737; *Stuckey*, 231 Ill. App. 3d at 563, 596 N.E.2d at 655; *People v. Moya* (1988), 175 Ill. App. 3d 22, 24, 529 N.E.2d 657, 659.) Improper comments made during closing arguments, however, do not deprive a defendant of a fair trial, or constitute reversible error unless they are material and they substantially prejudice the accused. *People v. Westbrook* (1992), 262 Ill. App. 3d 836, 856; *Stuckey*, 231 Ill. App. 3d at 564, 596 N.E.2d at 656.

■ Although we do not condone the prosecution's use of the term "child molester," the State's use of said term does not constitute reversible error since it was based upon facts in the record. The record shows that defendant was charged with the criminal sexual assault on the basis that he performed an act of fellatio upon a 15-year-old boy. The victim and an eyewitness both testified that defendant performed such an act. Accordingly, we cannot reverse defendant's conviction on the basis that he was characterized as a "child molester" by the prosecution.

Defendant next complains that the prosecutor's statement during the State's closing argument that the police department was trying to "protect children from child molesters and *** protect the child from child murders" was improper.

The record shows that defendant objected to the above statement and the court promptly sustained that objection and instructed the jury, both orally and in writing, that counsel's comment was not evidence. Statements made during closing argument which could prejudice a defendant may be cured where the trial court subsequently instructs the jury that closing arguments are not evidence and that it should disregard any argument not based upon the evidence. (*People v. Westbrook*, 262 Ill. App. 3d at 856-57; *People v. Graca* (1991), 220 Ill. App. 3d 214, 221, 580 N.E.2d 1328, 1334.) Accordingly, any error resulting from the prosecutor's statement in the present case was cured by the trial court's sustaining of defense counsel's objection and subsequent instructions to the jury.

Defendant's last contention with respect to the prosecution's comments during its closing argument is that the prosecutor "denounced" defendant as a homosexual. We disagree.

Defendant's allegation that the prosecution denounced him as a homosexual is not borne out by the record. The record shows that it was defense counsel who first used the word "homosexual" during closing arguments:

"DEFENSE COUNSEL: The leadership of the Chicago Police Department went into a homophobic hysteria.

They were more concerned about the absolutely baseless allegation of a street thug under investigation for an armed robbery that they might have a homosexual in the police department.

If you allow those clowns to get away with this crock, then you will change the course of criminal justice in their community in a significant way. Because the refrain from our police lock-ups will cease to be 'the police officer beat me, to the police officer molested me.' And why not. It worked. Tony Avila admitted to an armed robbery. *** Well, go home Tony. Just be quiet about, you know, homosexuals in the police department. We can't afford that. Go rob some civilian. Leave the department alone."

The prosecutor subsequently made the following statement during the State's rebuttal argument which included references to homosexuality:

"PROSECUTOR: You will recall that defendant, on September 28th of 1989, was robbed of his gun, *** his police service revolver and his own personal motor vehicle, his car.

Now, recall *** that [defendant] reported *** it right away.

* * *

So what does he do? He gives a very vague description of an individual named Avila. *** And Mike.

* * *

And then you might ask, 'well, why?' At first blush you might think well, maybe it's because then they will find out defendant is a homosexual. Big deal. You think he is the only homosexual in the City of Chicago?

DEFENSE COUNSEL: Objection, Judge. There is no evidence of that.

PROSECUTOR: This isn't 1960 here.

THE COURT: The objection is overruled. These are the arguments and they are to be confined to the evidence.

The objection is overruled.

PROSECUTOR: He knew that Avila, were he picked up on the armed robbery would not only tell about his sexual escapade of the 28th of September. But Avila would also

tell of the September 23rd incident which involved *** not only him, but the child E.B., the 15 year old."

When reviewing allegations of prosecutorial misconduct during closing arguments, an appellate court must examine the closing arguments of both the defense and the State in their entirety and all comments must be placed in their proper context. (*People v. Morgan* (1991), 142 Ill. 2d 410, 453, 568 N.E.2d 755, 770; *People v. Campbell*, 264 Ill. App. 3d at 733; *People v. Westbrook*, 262 Ill. App. 3d at 856; *People v. McBounds* (1988), 182 Ill. App. 3d 1002, 1015, 536 N.E.2d 1225, 1234.) Where defense counsel provokes a response, defendant cannot later complain that the State's reply denied him a fair trial. *People v. Lyles* (1985), 106 Ill. 2d 373, 390, 478 N.E.2d 291, 297; *People v. Westbrook*, 262 Ill. App. 3d at 854.

In the present case, defense counsel provoked the prosecutor's comment. Defense counsel's reference to homosexuality invited a response from the prosecution rebutting defense counsel's theory of the case with respect to the police department's treatment of defendant based upon the fact that he was alleged to have committed a homosexual act. Accordingly, we cannot reverse defendant's conviction on the basis that the State mentioned defendant's homosexuality during closing arguments. For the aforementioned reasons, we find that defendant was not deprived of a fair trial by comments made by the prosecutor during the State's closing argument.

The last two issues for review by this court concern sentencing. First, defendant argues that he is entitled to a new sentencing hearing because his conviction for the lesser-included offense of aggravated criminal sexual abuse could have influenced the trial court when it formulated the sentence for criminal sexual assault. We disagree.

■■ There is no evidence in the record which shows that the court considered the lesser offense of aggravated criminal sexual abuse when formulating its sentence for the greater offense of criminal sexual assault. The record shows that the court listened to the comments of counsel, considered the presentence investigation report and discussed at length the facts of the case. The court then sentenced defendant to 10 years for criminal sexual assault. Subsequently, the court fully advised defendant of his rights with respect to an appeal. Later, at the close of the sentencing hearing, the court sentenced defendant for the lesser-included offense. The transcript reads in pertinent part:

"THE COURT: Wait a minute. I just realized on the aggravated criminal sexual abuse—I imposed a sentence of ten years on the criminal sexual assault. On the aggravated criminal sexual abuse, a Class 3, I'm sentencing him to five years in the penitentiary. All right. Those sentences will be served at the same time."

There is no evidence in the record which suggests that defendant's sentence for criminal sexual assault was improperly affected by his separate additional conviction and sentence for aggravated criminal sexual abuse. In order to warrant a new sentencing hearing, a defendant must affirmatively show that the trial court relied upon improper evidence in imposing the sentence. (*People v. Trimble* (1991), 220 Ill. App. 3d 338, 353, 580 N.E.2d 1209, 1218.) Defendant has failed to meet this burden. Where there is no indication from the record that defendant's reversed sentence and vacated conviction had any bearing on the sentence for the crime which is affirmed, it is not necessary to remand the cause for a new sentencing hearing. (*People v. Einstein* (1982), 106 Ill. App. 3d 526, 535, 435 N.E.2d 1257, 1264.) Moreover, a remand for resentencing is not required on the conviction which is affirmed where a separate sentence has been imposed for each offense. (*People v. Poe* (1984), 121 Ill. App. 3d 457, 463, 459 N.E.2d 667, 671.) Accordingly, we will not remand this cause for a new sentencing hearing.

Finally, defendant maintains that his 10-year sentence for criminal sexual assault was excessive and at variance with the spirit and purpose of the law because defendant was a first-time offender with strong family and community ties. We disagree.

■ The trial court sentenced defendant after careful thought, deliberation and consideration of the record. The trial judge considered factors in aggravation and mitigation as required by section 5—4—1(a)(3) of the Unified Code of Corrections. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—4—1(a)(3).) Furthermore, the sentence given defendant was within the statutory parameters for minimum and maximum terms for the offense of criminal sexual assault. Criminal sexual assault is a Class 1 felony for which the law allows a sentence of 4 to 15 years. (Ill. Rev. Stat. 1989, ch. 38, pars. 12—13(b), 1005—8—1(a)(1)(4).) A sentence may not be altered by a court of review absent a showing that the trial court abused its discretion. (*People v. Trimble* (1991), 220 Ill. App. 3d 338, 353, 380 N.E.2d 1209, 1218.) Defendant has not met this burden of proof because he has failed to demonstrate that his sentence was excessive. Accordingly, we affirm defendant's 10-year sentence for criminal sexual assault.

For the above reasons, we affirm defendant's conviction and sentence for criminal sexual assault and we reverse defendant's conviction for aggravated criminal sexual abuse and vacate his sentence for that offense.

Affirmed in part; reversed in part and vacated in part.

TULLY, P.J., and CERDA, J., concur.